## Lake & Barron v. The Governor.

The declaration stated, that the defendant being charged as father of a bas-
tard child, gave bond payable to the Governor in the penalty of $2,000,
to appear before the County. Court to answer the charge, and that he
failed to appear; and on demurrer, the Court gave judgment for $500,
without a jury. It was held.

1. That the bond under the act of 1811, was properly made payable to
the Governor.

2. That the defendant was liable to an action on the bond for failing to
appear, though no conviction against him was shewn.

3. That it was not error for the Court to render judgment without a jury,
for a less sum than the penalty of the bond.

4. That such bond is not within the statute of 1824, requiring breaches to
be assigned.

An action of debt was instituted in Perry County Court,
in 1827, in the name of John Murphy, Governor of Ala-
bama, and successor of I. Pickens, against J. Lake and
W. Barron, on a bond executed by them the 31st Octo-
ber, 1825, whereby they bound themselves to said Pick-
ens, Governor, and his successors in office, in the penalty
of $2,000, with condition, that, " whereas, Peggy Hart-
ley, a single woman, hath in, and by her examination, ta-
ken in writing, and upon oath, before me, the undersigned,
a justice of the peace in and for said county, declared that
on the 4th of October instant, she was delivered of a male
bastard child, and hath charged the said Lake with having
begotten her with child of said bastard: Now, the condi-
tion of the above obligation is such, that if the said Lake
do and shall appear at the next County Court, to be holden
in and for said county, on the second Monday in January
next, and shall abide and perform such order or orders as
shall be made in the premises, pursuant to the act in such
case made and provided, and shall, in the mean time, be
of good behaviour, then to be void, &c."

The declaration contained three counts: the first was
on the penalty of the bond only, alleging as a breach the
non-payment of the money.   The second count recited
the obligation and condition, and averred-that at the Jan-
uary term, 1826, the County Court was not holden, on ac-
count of the absence of the Judge, whereby the obligation
thereof stood in full force and effect in law to the next
term, to wit: July term, 1826, at which time said Lake
failed to appear to abide the order of the Court, by means
of which the bond became forfeited.   The third count was
nearly similar, but stated the instrument as a recogni-

JANUARY 1830.

Lake & Barron
v.
The Gov'r.

zance.   In the writ, and in the several Courts, the damages were laid at $500.   The defendants craved oyer of the bond and condition, and demurred generally.

The County Court, at July term, 1828, overruled the demurrer, and the defendants failing to plead over, judgment was rendered against them for $500; and this is here assigned for error.

P. N. WILSON for the appellants, argued that the bond was void; that it should have been taken payable to the Judge of the County Court, and not to the Governor; that the declaration was insufficient, because it did not allege that an issue had been tried to ascertain if the obligor was in fact the father of the child; that the mere failure to appear, gave no cause of action, the County Court having made no order, and no further proceedings having been had on said complaint; and that the Court could not lawfully render judgment without inquiring of the damages, and could not, on demurrer, render judgment for $500, as it was a less amount than the penalty, and was not ascertained by any issue of fact, *a* and when breaches had not been assigned according to the statute. *b*

*a* Laws of Al. 65.
*b* Acts of 1824.

STEWART, for the defendant in error, relied on the following authorities: 1 Gould's Espinasse, 25, 42, 44, 45, 46, 112; 9 East, 55; 2 Strange, 1156; 1 Day's cases, 19; 2 Burrows, 772; Douglass, 367; Salkeld, 659; 3 East, 22; 7 Term, 300; 1 Tidd's Practice, 508, 511; 2 Bosanquet & Puller, 446; 1 Saunders, 58, note A; 2 Caine's Reports, 327; 3 Saunders, 187, note 2; Laws of Alabama, 64, 66, 178, 216, 933.   Ante page, 370.

By JUDGE WHITE.   It is not contended that there is any variance between the bond as declared on, and that read upon oyer.   But in the first place, it is insisted that the judgment is erroneous, in having been rendered for a less sum than the penalty, by the Court, without the intervention of a jury.   To this, it may be answered that the plaintiffs here cannot be heard to complain of that as an error, which is manifestly for their own advantage.   Again, the statute of 1811, concerning bastardy, prescribes no particular amount in which the justice is required to take the appearance bond.   The design, however, was to enforce the appearance of the reputed father, that he might be re-bound by the County Court, to prevent the child

JANUARY 1830.

Lake & Bar-
ron
v.
The Gov'r.

from becoming chargeable on the county; and as the law limits the sum in which he would have been re-bound, had he appeared, to five hundred dollars, it is at least reasona- ble that he should forfeit that amount for not appearing. It is further contended, that, after the overruling of the demurrer, there should have been an assignment of breaches on the roll, and an assessment of damages, in con- formity to the provisions of the act of December 20th, 1824. Though the language of this statute is very broad and comprehensive, it is not sufficiently so to embrace a bond like the one under consideration. If breaches had been assigned, and an attempt made to assess damages, by what data or criterion could they have been ascertained? No specific injury had been sustained, though one was apprehended, and that too, not to an individual, but to the county. This injury, from its very nature, was unsuscep- tible of admeasurement in anticipation of the expense that might be incurred. Another reason why it was unneces- sary, if it would not have been improper, to have assessed the forfeiture by means of a jury, is, that the reputed fa- ther should not be held responsible, for not appearing, in a greater sum than he would have been made to pay upon appearance, and as the statute leaves this with the court under the restriction before mentioned, there was no ne- cessity for a jury.

As to the objection, that the defendants were not liable until it was ascertained by the finding of a jury that Lake was the father of the child as charged, this is founded, in part, on the supposition that this fact could not be taken for granted for any purpose, or ascertained in any other way. The 3d section of the act of 1811, does provide, " that the court shall cause an issue to be made up, whe- ther the reputed father is the real father of the child;" and it further provides, that he shall have a right to appear by himself or counsel, and controvert by legal evidence, the charge alleged against him. But the amendatory act of 1816, [a] modifies this provision, so as to make the necessity of ascertaining this fact, by the finding of a jury, depend on the will of the father. Its words are, " that hereafter, when a cause of bastardy shall be returned to the County Court, under the authority of the act of which this is an amendment, the said County Court shall have power and authority to cause to be summoned and empanelled a jury in the same manner as tales jurors are summoned, for the purpose of trying the issue of bastardy, if the defen-

[a] Laws of Al- abama, p. 66.

JANUARY 1830.

Lake & Barron
v.
The Gov'r.

dant or reputed father shall demand the same." Then it is apparent, that since this last law, if the father does not demand a jury, they need not be summoned, but the Court may ascertain the fact of the person charged being the father, upon the oath of the mother. But aside from these considerations, Lake's not appearing, placed him in default, and amounted in legal estimation to an admission of his being the father of the child, and of every other fact necessary to subject him to the forfeiture incurred. .

The most difficult question remains to be examined, and that is, whether the bond was properly taken to the Governor. On this subject, the statute is silent, and we are left to determine it from the nature of the proceedings, and the design of the instrument in question. The proceedings are not strictly criminal, neither are they in all respects dissimilar. They are required to be had mainly for the public good, though individual advantage may be the result. In their consequences likewise, they tend, at least, to punish the licentious father, who has been the guilty means of bringing into existence a helpless being, under circumstances of threatening poverty. In these respects, as well as others, they may be said to resemble punishment for crime. The bond too, though not in form a recognizance, is given to secure the attendance of the obligor at court, to effectuate a purpose in which the community at large are interested, and may, therefore, perhaps be embraced within the meaning of the statute, which requires recognizances of every kind whatsoever to be given to the Governor. [a] Upon the whole, I can perceive no stronger reason for this bond being given to the Judge of the County Court, or any other person than to the Governor, and as the statute required it, without prescribing to whom it should be executed, we are left to the alternative of pronouncing it good as taken, or defeating the wholesome provisions of the statute itself. '

a Laws of Al. 216.

Judgment affirmed.