# TRAWICK v. DAVIS.

1. If the proceedings before the Justice of the Peace in a case of bastardy, are defective, the defendant should move the County Court to quash them before he appears, and impliedly admits himself to be regularly in Court.

2. The bond given for the appearance of one charged with being the father of a bastard child should be made payable to the Governor.

3. *Semble*—the bond entered into to answer to a charge of bastardy, is binding upon the obligors until the case is disposed of, though it may be continued for several terms. Be this as it may, the continuance of the case on the defendant's affidavit will keep it in Court as to him.

4. The act of 1811 as modified by the act of 1816, only requires an issue and trial by jury to ascertain the paternity of a bastard child, where the reputed father demands it.

5. The appearance of the reputed father is not indispensable to authorize the Court to determine the question of filiation.

6. Under our statutes it need not appear of record, that it was shown to the County Court that the bastard child was still living.

7. Notwithstanding the remedy provided by statute, a direction in the judgment against the father of a bastard child, that an execution issue thereon for each default in the payment of the sums adjudged to be paid, is regular. [COLLIER, C. J. *dissenting on this point.*]

8. The mother of a bastard child should not be made a party to a writ of error prosecuted by the father, but the Judge of the County Court, who is considered as the legal plaintiff in the judgment, should be made the defendant.

WRIT of Error to the County Court of Tuscaloosa.

This was a proceeding in bastardy, commenced under the statute, by the defendant in error against the plaintiff, in which she charges him with being the father of a bastard child, of which she had been delivered more than three years previously. The defendant below entered into a bond with sureties, in the penalty of one thousand dollars for his appearance at the next term of the County Court, and to "abide and perform such order or orders as shall be made in the premises, pursuant to the act in such cases made and provided," &c. The condition of the bond recites that Sarah Davis is a single woman, and that her examination, taken in writing before the Justice of the Peace who issued the warrant, established the charge against the accused.

At the term of the Circuit Court to which the proceedings were returned, the case was continued on the affidavit of the accused. At the next term an entry was made disposing of the case, as follows: " Came the said Sarah Davis, by her attorney, and the said defendant, the said Hugh Trawick, being called to answer the complaint made herein, came not, and it appearing to the satisfaction of the Court, by the examination of the said Sarah Davis, that the said complaint is true, and that the said defendant is the real father of said bastard child. It is therefore considered by the Court, that the said defendant be condemned to pay the sum of fifty dollars yearly, for the period of ten years, towards the maintenance and education of said bastard child, and that execution issue to collect the said several payments, and that the said defendant pay the costs of this prosecution," &c. The record does not discover that any further order was made in the premises.

HUNTINGTON, for the plaintiff in error, contended, that the Justice of the Peace before whom the preliminary proceedings were had, having failed to examine the woman in the presence of the alledged father, and the affidavit before the Justice not having averred that the child was then in existence, the County Court erred in taking jurisdiction of the case; that the statute requiring an issue to be made up and submitted to a jury, the Court had no right to try and determine the question of paternity, and that although the plaintiff in error was not present, yet that something in the nature of a writ of inquiry was necessary; that the Court erred in resting upon the isolated testimony of the defendant in error—the credibility of such evidence being peculiarly liable to suspicion, and more than three years having elapsed since the alledged birth without any proof that the witness had made the charge during the pains of travail, or adhered to it up to the time of the trial; that the failure to recognize the plaintiff in error to appear at a subsequent term operated as a discontinuance; that the Court erred in rendering its judgment, no *issue* having been found against the plaintiff in error, and also in ordering execution upon the judgment without an intervening bond; moreover, that the judgment entry was defective in omitting to state that the then present existence of the child was proved to the satisfaction of the

42

Court, or any proof as to age, sex, place of birth or residence of the child, whereby the same could, by the said judgment, be in any manner proved or identified.

In support of which the counsel for the plaintiff in error cited Aik. Dig. Tit. Bastardy, 76, 77; Isaacs v. Judge, &c. 5 Stew. & Por. 402; Foster v. Beaty, 1 Greenl. 304.

PECK & CLARK, for the defendant, insisted that most of the errors assigned were rather ideal than real, that this Court will not look into the proceedings before the Justice of the Peace, or inquire whether they were in conformity to law. That the continuance of the case at the first term of the County Court prevented a discontinuance, although a new recognizance was not then entered into. The judgment authorizes the person entitled to receive the money, to have execution upon default in the payment of any instalment; and as to the appointment of a guardian, that is not properly a part of the judgment, and cannot in any manner affect it. They cited Mariner v. Dyer, 2 Greenl. Rep. 165.

COLLIER, C. J.—1. The objection to the proceedings before the Justice of the Peace issuing the warrant and taking the bond of the defendant are not now open to examination. If defective to such an extent as to make them voidable, a motion to quash should have been submitted to the County Court at the proper time; and it is not permissible, after the accused has appeared and impliedly admitted himself to be regularly in Court, by asking and obtaining a continuance, to insist that the warrant under which he was arrested is invalid. [Walker v. Commonwealth, 3 Mar. Rep. 356; Schooler v. Commonwealth, 6 Lit. Rep. 89.]

2. The statute does not expressly direct to whom the bond taken for the defendant's appearance shall be made payable; yet as the charge partakes of the character both of a civil and criminal proceeding, we think by analogy to the law providing for bonds and recognizances which concern the public, the bond was properly made payable to the Governor. Such has been the decision in South Carolina on this point. [Commissioners, &c. v. Gaines, 1 Const. Rep. 459; See Lake & Barron v. The Governor, 2 Stewart's Rep. 395.]

3. The failure of the County Court to cause the defendant to renew his bond, did not operate a discontinuance of the case. The object of the bond was intended to coerce his appearance, and if he made default he would become liable to pay the penalty or comply with the order of the County Court. It was essential to the initiation of the proceedings; but the case being commenced and the defendant appearing, if a trial could not be had at the first term, the want of a new bond would not put an end to it. The condition of the bond entered into goes beyond the terms prescribed by the statute; it requires the accused "to abide and perform such order or orders as shall be made in the premises," &c. Whether this extension imposes a duty which the act does not, we will not inquire; but if such is the legal effect of the statutory condition, then it is clear that no additional bond was necessary to enable the Court to enforce its orders. [Taylor v. Hughes, 3 Greenl. Rep. 433.]

Again—we are inclined to think the bond taken in a case of bastardy, assimilates itself, in its legal effect quite as much to a bail bond in a civil case as to a recognizance in a State case; and that it continues in force until the case is disposed of, or the sureties are discharged by an order for that purpose. It follows from what we have said, that the continuance of the case on the defendant's affidavit, as to himself at least, kept it in Court, even if a bond was necessary to bind his sureties.

4. Under the act of 1811, an issue and trial by jury were indispensable in order to ascertain the paternity of a bastard child, but that statute has been so far modified by the act of 1816, as only to make it necessary to submit the case to a jury where the reputed father demands it. Such was the decision of this Court in Lake & Barron v. The Governor, [2 Stew. Rep. 395,] and we are unwilling to depart from it.

5. Having ascertained the proceeding not to be strictly of a criminal character, we think the appearance of the defendant was not indispensable to authorize the County Court to determine the question of filiation. He could not at pleasure arrest the course of the Court, and leave no other alternative than to sue his bond; but the mother, with the assent of Court might, perhaps, have elected to sue the bond instead of submitting the case to the Court for its judgment.

6. In respect to the objection that it does not appear of re-

cord the child was born alive and still lives, although the proceedings would appear more technical if they contained such a statement, yet its omission is not fatal. Proceedings in a case of this kind should not be scanned with too much strictness, but it should be rather intended, where the reverse is not shown, that every thing material was proved in the County Court. Our statutes require no declaration to be made in that Court of the facts which are necessary to make out the guilt of the defendant as do the laws of Maine and several other States; consequently the decisions which have been cited from that State on this point are entirely inapplicable. There is an additional reason why it need not appear of record that the child is living; it is this, our statute provides " that if said child should never be born alive, or being born, should die at any time, and that fact suggested upon the record of the County Court, then, and from that time, the bond aforesaid shall be void." Here a very simple mode is provided, by which the reputed father may avoid a charge upon him by making known to the Court that the object of it has ceased to exist.

7. The statute does not contemplate an award of execution such as has been made in this case. It merely directs that the reputed father shall be condemned by the judgment to pay not exceeding fifty dollars annually, at the discretion of the Court, towards the maintenance and education of the child; and then it provides that the father shall execute a bond with surety for the payment of that sum, which shall be made payable to the Court and appropriated under its special order from time to time, so that it be not paid to the mother. This bond is to have the force and effect of a judgment, and execution may issue thereon as the sums secured by it become due. The award of execution on the judgment of the County Court was in my opinion unauthorized by the statute; the only regular mode of enforcing obedience to such a judgment is by an attachment to compel the defendant to execute a bond with surety to pay annually the sum adjudged to be proper for the maintenance of the child. The consequence, if my opinion were to prevail, would be to show that the award of execution is reversible, while the judgment itself would remain in full force. [Johnson v. Harvey, 4 Mass. Rep. 483.] My brothers, however, do not agree with me on this point, but

think that although an attachment was regular, it was competent for the Court to have ordered an execution also. We all however, concur in opinion that the writ of error is irregular in making the mother of the bastard child a defendant. The bond consequent upon the judgment is required to be payable to the County Court; and this, in the absence of more explicit legislation on the point, may serve to show that the judgment should be considered to be in favor of the Judge of that Court, as the representative of the county. But if the law were otherwise, it is certain that the mother is not a party to the judgment, for the statute in express terms declares that the money shall not be paid to her. She was then improperly made a party, and for that cause the writ of error is dismissed.