## WILSON *vs.* THE JUDGE OF THE CO. COURT OF PIKE.

1. Where the putative father of a bastard appears, and submits, without objection, to a trial in the County Court on the merits, it is too late to object to the regularity of the recognizance taken by the justice.

2. After the jury has been empannelled to try the question of paternity, the court, on the production of a release from the mother of the bastard, is not bound, on the motion of the defendant, to dismiss the proceeding, but may refuse to do so, and in that event the defendant, if he wishes to insist on it, should plead the release in bar, and request of the court appropriate charges to the jury.

3. A release given by the mother of a bastard, whilst under age, is not binding, and if afterwards repudiated by her, cannot be insisted on in bar of her rights.

4. The proceedings before the justice against the putative father of a bastard are a part of the record of the cause, and if from them the facts necessary to sustain the jurisdiction of the County Court appear, it will be sufficient, notwithstanding the judgment entry may fail to disclose them.

5. A judgment against the father of a bastard, that he pay "the sum of forty dollars, annually, for ten years, to wit, forty dollars now, and forty dollars every year for ten years afterwards," is erroneous; but as the judgment shows upon its face that the defendant was condemned to pay " forty dollars, annually, for ten years," the latter portion of the judgment entry must be treated as a clerical misprision, and here amended.

(PARSONS, J., dissenting—thought the judgment was not amendable, and should be reversed.)

ERROR to the County Court of Pike.

THIS was a proceeding under the bastardy act, instituted by

Mary Ann Lawhorn against the plaintiff in error. The questions raised by the assignments of error will be understood from the opinion of the court.

MARTIN & BALDWIN, for the plaintiff in error.

No counsel for the defendant.

DARGAN, C. J.—It is contended that the recognizance, by which the plaintiff in error was bound to appear before the County Court, is defective, and therefore the court had no jurisdiction to try the cause. It is not necessary to enquire whether the recognizance would have been held good, if a motion had been made to quash it before proceeding to trial on the merits, or whether the judgment by default could have been sustained upon it, had the party failed to appear. But as he did appear and made no objection to the regularity of the proceedings, it is now too late to object to any matter of form after a trial on the merits. The proceeding before the justice shows a statement of facts which authorised the court to proceed with the cause, and no objection being made to their regularity until a trial on the merits, it is now too late to object to matters of form.— Trawick v. Davis, 4 Ala. 328; 9 ib. 455.

2. Upon the trial the defendant introduced to the court the receipt of the mother of the child, by which she acknowledged satisfaction for the cause of complaint, and agreed that the prosecution should be dismissed; but the plaintiff being examined, stated she was under twenty-one years of age when she executed it, and that she then dissented from it, whereupon the court refused to dismiss the cause and the defendant excepted.

But for the decisions heretofore made by this court, I should be very reluctant in holding that the mother of a bastard, after she had instituted proceedings against the putative father, could compromise the cause and dismiss the prosecution. I, however, admit that the law is settled in this State, that she can, and we cannot hold otherwise without overruling decisions that have for a long time been acquiesced in, (Robinson v. Crenshaw, 2 S. & Port. 276; Ashburn v. Gibson, 9 Port. 549,) yet I can perceive no error in the ruling of the court, refusing to dismiss the prosecution in this case, for a jury had been empannelled to try the question, who was the father of the child, and we think, that

when the cause is submitted to a jury, the court may refuse to try the question of release, or any other question of fact that would bar the prosecution, and then the defendant would be at liberty to plead his defence or insist upon it before the jury. This is the course he should have pursued in this case. After the court had overruled his motion to dismiss the prosecution, he should have insisted on his release by way of defence before the jury, and requested of the court the appropriate charges arising out of this part of the case. We do not intend to say that the court may not, if it sees fit, take upon itself to try any other fact insisted upon by way of defence, but it may decline to do so, and thus compel the defendant to make it before the jury; and we cannot infer from the fact that the court refused the motion to dismiss the prosecution, that the question of release had been decided or adjudicated by the court, thus precluding the defendant from having it decided by the jury.

3. But independent of this view, we think the court did not err, for the reason that the release, being given by the mother of the child before she was of age, was not binding upon her and she could after becoming of age repudiate it, and insist upon her rights. But it is insisted that she was not a competent witness to prove her nonage. This is true; she is only a competent witness to prove the paternity of the child, for she is clearly interested under our statutes in the prosecution, and can only be examined touching the question of the child's paternity.—Clay's Dig. 134, § 2. We do not, however, understand, from the bill of exceptions, that an objection was made to the competency of the evidence of the mother, or that an exception was taken because of its admission; but the exception is to the refusal of the court to dismiss the prosecution, not to the admissibility of the testimony of the mother to prove her infancy.

4. It is also contended that the record does not show that the mother of the child resided in Pike county, at the time the charge was prefered, or that the child was born in that county, and consequently the jurisdiction of the court is not shown. If this objection was true in fact, it would be fatal, for it is clear that the charge must be prefered in the county in which the mother resides, if made before the birth of the child, or if after, then in the county in which the child was born.—Clay's Dig. 133; Pruitt v. The County Judge, 16 Ala. 705. But it is not

indispensable that the judgment entry itself should show the county in which the child was born, or in which the mother resided, at the time of prefering the charge, provided this fact sufficiently appear from the other parts of the record. It is true that the judgments of courts of limited jurisdiction must show the facts and circumstances, which authorise the court to take cognizance of the matter; in other words, they must show the jurisdiction of the court, otherwise, the judgment or sentence is a nullity.—Wyman v. Campbell, 6 Port. 219; The Commissioners Court of Talladega v. Thompson, decided at the present term. But it is not to be understood that the judgment or sentence must recite the facts that give jurisdiction; if they appear from the record of the cause, this will be sufficient. It is only necessary that the record should show the jurisdiction of the court, for this being shown, it will then be apparent that the court did not act without authority. This seems to be the result of all our decisions upon this subject.—Bates v. The Planters and Merchants Bank, 8 Port. 99; Levert v. The Same, ib. 104; 9 Port. 378; 1 Ala. 435; 5 ib. 26; ib. 284; 10 ib. 375. We must, therefore, look to the entire record, and if it appear from any part of it, that the charge was prefered in the proper county, the court was not without jurisdiction, and the objection must fail. Both the complaint of the mother made to the magistrate, and the justice's warrant for the apprehension of the defendant, show that she resided in Pike county, at the time the charge was prefered, and we are satisfied that these proceedings must be looked to as part of the record of the cause, for without them there would be nothing to support the judgment of the County Court. They are returned to the County Court and become the foundation of the subsequent action of that court. In no other mode can the County Court take jurisdiction of the matter, and if these proceedings show that the County Court has jurisdiction, its subsequent action is not without authority, but its jurisdiction is complete. The cases relied on by the plaintiff's counsel do not militate against this view. In the case of Root v. The State, 10 G. & Johns. 374, the proceedings were held erroneous, because in the indictment, the residence of the mother and child was alleged to be in Carrol county, but the affidavit of the mother showed that they resided in Frederick. It may be asked how could this variance between the affidavit and the indictment

vitiate the judgment? The only answer that can be given is, that the proceedings before the justice are considered as part of the record, and are indeed the foundation upon which the subsequent proceedings had in the County Court must rest. So in the case of Edmonds v. The State, 5 Humph., neither the complaint of the mother, the warrant, nor the recognizance showed the county in which the child was born. This not appearing either in the proceeding before the justice, or in the County Court, the Supreme Court of Tennessee, after adverting to the fact, that the county in which the child was born nowhere appeared in the record, held, and correctly, as we think, that the judgment was erroneous. We are satisfied that the proceedings before the justice must be considered as part of the record, and looking to them, it appears that both the mother and the putative father lived in Pike county, at the time the charge was prefered. The jurisdiction of the court sufficiently appears, and the objection on that ground cannot be sustained.

5. It is also insisted that the judgment is erroneous, because it condemns the defendant in payment of forty dollars annually for eleven years instead of ten. The judgment is as follows: "It is therefore considered and ordered by the court that the said James Wilson, defendant, pay the sum of forty dollars annually for ten years, to wit, forty dollars now, and forty dollars every year for ten years afterwards." The statute prescribes, that if the issue be found against the putative father, he shall be condemned to pay yearly, for ten years, not exceeding fifty dollars towards the maintainance and education of the child. The court, therefore, has a discretion in fixing the amount of the annual payments, not to exceed fifty dollars, but no discretion as to the number of annual payments. An annual payment for ten years is all he can be condemned to pay, but the judgment in this case condemns him to eleven, the first immediately upon the rendition of the judgment, and then an annual payment for ten years thereafter. This is certainly erroneous, but the question is whether it be not such an error as must be here amended. It is enacted that no cause shall be reversed by the Supreme, or any Circuit Court, for any miscalculation of interest, or other clerical misprison in entering judgment so as to give cost to the plaintiff in error, but in all such cases, the Supreme Court may

order the judgment to be amended at the cost of the plaintiff in error.—Clay's Dig. 322.   Under this act, it is the well settled practice, that if the demand is ascertained by an instrument in writing, and the judgment be by default or *nil dicit*, if the clerk should by mistake calculate too much interest, the error will be corrected in this court at the cost of the plaintiff.—Spence v. Rutledge, 11 Ala. 590.   Even before the passage of this act, and under the authority of the act of 1807, (Clay's Dig. 321,) this court refused to remand a cause, where the judgment was for more than the verdict, but reversed and rendered for the proper amount.—Howard v. Weir, Minor's Rep. 84.   In conformity with these enactments and decisions, we feel constrained to correct the judgment in this court, for upon its face it shows that the defendant below was condemned to make ten annual payments of forty dollars each.   This within itself shows that the other portion of the entry, charging the defendant with eleven instead of ten payments, is a clerical misprison.   The amendment will be made by striking out the word ten where it last appears in the judgment entry and inserting the word nine.

The other questions raised by the plaintiff's counsel in his his argument, we have duly considered, but feeling satisfied that they cannot avail the plaintiff in error, we deem it unnecessary to give them a particular examination in this opinion.

The judgment as amended must be affirmed.

PARSONS, J., concurred in the opinion except on the last point.   Upon the question of amending the judgment, he thought it could not be done, and therefore that it should be reversed, and the cause remanded.