## SEALE *vs.* McCLANAHAN, Judge, &c.

1. When a party is bound over to appear before the Court of Probate, on the charge of being the father of a bastard child, no further notice to him is required, but the court may investigate the charge and render judgment against him in his absence; his non-appearance furnishes no reason for suspending or thwarting the action of the court.

2. In proceedings under the bastardy act, the Court of Probate has but a limited jurisdiction, to be exercised in a special manner; and this jurisdiction attaches when a party is bound to appear before it, on the charge of being the father of a bastard child, at its session next after the bond is taken; but it has no power to take cognizance and proceed *ex parte* with a cause brought before it in a different manner.

3. If the bond does not conform to the statute, in requiring the defendant to appear at "*the next term*" after it is taken, it is void, and the proceedings dependent upon it are *coram non judice*.

4. A judgment rendered by the Court of Probate under the bastardy act, though not in favor of any person by name as plaintiff, is nevertheless sufficient, since the statute points out with certainty who is the plaintiff.

ERROR to the Court of Probate of Shelby.

This was a proceeding against the plaintiff in error, as the putative father of a bastard child.

It appears that the mother, Lamantha Music, went before a justice of the peace for Shelby county, on the 7th day of May, 1850, and made oath that she was then with child; that it was likely to be born a bastard, and that James Seale, the present plaintiff in error, was the father of said child. There-

upon, the said justice issued his warrant, caused the said Seale to be apprehended and brought before him, who entered into bond in the penalty of five hundred dollars, payable to Henry W. Collier, Governor, &c., with Jackson Porter and Willaby Seale, his securities, conditioned "that if the said Seale do and shall appear at the next Probate Court, to be holden for Shelby county on the second Monday in July next, and abide and perform such order and decree as shall be made in the premises, pursuant to the act in such cases made and provided, and shall in the mean time be of good behavior, then the obligation to be void," &c.

At the July term of the Probate Court, the cause was continued, it is said, "on the application of the plaintiff."

Afterwards, at the August term, 1850, of the Probate Court, Seale failing to appear, the court caused an issue to be made up as to whether he was the real father of the child, and having examined the mother touching its paternity, proceeded to adjudge that Seale was the father, and that he should annually, on the 12th day of August of each year, for the term of ten years, pay or cause to be paid into the Probate Court for Shelby county, the sum of fifty dollars, for the support, maintenance and education of said bastard child, and that he should enter into bond with security, in the penal sum of one thousand dollars for the faithful performance of the said order; also, that he pay the cost, for which an execution was required to issue, and that an attachment issue to compel him to comply with the requisitions of the judgment.

On the 24th August, 1850, the writ of attachment was accordingly issued, and Seale having been arrested, petitioned for a *habeas corpus* to obtain his discharge from custody. The court, upon the trial of the *habeas corpus*, ordered the sheriff to retain him in custody, until he should give bond as required by the previous order. Thereupon, the said Seale entered into bond and security, which was approved by the court.

It is here assigned for error, that the Probate Court improperly rendered judgment against Seale, without having him before the court; that the judgment itself is informal and in favor of no one; and that there was error in issuing an attachment without first citing the party to show cause against its issue.

L. E. PARSONS, for plaintiff in error.

RICE & MORGAN, *contra.*

CHILTON, J.—In this case, the only point of difficulty arises upon the construction of the second section of the bastardy act, found in Clay's Digest 134, which requires the justice of the peace, before whom complaint may be made that any one is the father of a bastard child by a single woman, on sufficient cause appearing, "to bind such person, so accused, in bond, with good and sufficient security, to be and appear before the next County Court to be holden for said county, and in the mean time to be of good behavior." The third section declares, that the County Court aforesaid, at its next term, shall have full and complete cognizance and jurisdiction of said charge of bastardy. By the act approved 13th February, 1850, Pamphlet Acts, p. 37, it was provided, that proceedings in cases of bastardy, which are required to be returned to the County Court, shall, after the time named in the first section of this act, (viz: the first Monday in May, 1850,) be returned to the Court of Probate, in which the like proceedings shall be had as are required by the existing laws of the County Court; and the said Courts of Probate shall have and exercise full jurisdiction of, and perform all the duties in cases of bastardy now exercised and performed by the County Courts.

By the thirteenth section of the act establishing Courts of Probate, passed at the same session, (Acts of 1850, p. 27,) it was enacted, "that said judges of probate shall each hold, at the court house of their respective counties, a regular term of his court, to commence on the second Monday in each month, and may have special or adjourned terms, when required for any special business, at any time."

Under these statutes, we think it clear, that the bond taken before the justice of the peace in this case, and which the act of 1811 required should provide for the appearance of the putative father at "the then next term of the County Court," should have been made returnable to the term of the Probate Court next after it was executed, which must have intervened before the court in July. Had the bond been thus returned and conditioned, the next court, whether in May or June, as

the case might be, would, in the language of the act, have had "full and complete cognizance and jurisdiction of the charge."

We do not think that in such case any further notice to the party would have been required. Had he bound himself to appear at a court to which he might lawfully have been required to appear, his non-attendance would have furnished no reason for suspending, much less thwarting the action of the court.

But a limited jurisdiction is conferred upon the Probate Court in this matter, to be exercised in a special manner. This jurisdiction attaches when a party is bound to appear before it, upon a charge of being the father of a bastard child, at its session next after the bond is taken, and no statute confers on it power to take cognizance, and proceed *ex parte* with a cause brought before it in a different manner. If the justice could skip over two courts, why may he not two years? Where will be the point beyond which he may not require the party to appear? The rule and the only guide is furnished by the statute. If the bond does not conform to that, it is void, and the proceedings dependent upon it are *coram non judice*.

As respects the form of the judgment, it has been several times decided by this court, that it is sufficient, since the statute points out with unerring certainty who is the plaintiff. Trawick v. Davis, 4 Ala. 328; Austin v. Pickett, 9 ib. 102; Yarborough v. Judge of Shelby county, 15 ib. 556.

The other questions raised will hardly come up in the further prosecution of this party.

The judgment must be reversed, and the proceedings vacated. The cause will not be remanded, since it was never properly in the court below. The subsequent steps which would be required, would amount to the institution of new proceedings.