Intervenor Phyllis Everage appeals from judgment that she has no interest in the real estate of Paul Lamar Gibson, deceased, and is not entitled to any proceeds from the sale of the lands for division. We affirm.
Paul Lamar Gibson died intestate on June 18, 1972, survived by his widow, Mattie Lee Gibson, and four children, William Paul Gibson, Willie Anne Gibson Golden, Billy Lamar Gibson, and Thomas Marshall Gibson. Appellant Phyllis Everage, born March 23, 1932, also claims to be the daughter and eldest child of Paul Lamar Gibson, deceased.
On June 28, 1977, Mattie Lee Gibson and Billy Lamar Gibson filed a complaint to sell land for division, naming as defendants the other three Gibson children. The real estate sought to be sold included 507 acres owned by Paul Lamar Gibson at his death. J.P. Lester Sawmill, Inc., intervened, claiming an interest in the timber on the land. A sale was ordered upon a stipulation of the parties. After confirmation of the sale, but before distribution of the proceeds, Phyllis Everage intervened, alleging that *Page 831 
she was an illegitimate daughter of Paul Lamar Gibson, deceased, and claiming a child's share of the real and personal property of the decedent. Ms. Everage subsequently filed a motion to vacate the judgment of sale because she, as a joint owner of the lands, was an indispensable party and had not been joined in the suit.
The evidence was in conflict on the issue of Ms. Everage's relationship to the decedent. After a hearing ore tenus, the trial judge ruled that she had no interest in the real estate of Paul Lamar Gibson, deceased. The judgment reads, in pertinent part, as follows:
 "The rules of property pertaining to descent of property by illegitimate children has been settled by judicial decision and legislative enactment in Alabama since 1824. People have entered into transactions upon reliance of those settled rules of property. The law of Alabama and rights of Phyllis Everage to the subject property became fixed with the death of Paul Lamar Gibson.
 "Whether Trimble v. Gordon is apt authority is not decided. Retroactive application of the rule of Trimble to the status between the parties would have a detrimental effect on the administration of justice and property rights in Alabama. The court adheres to those settled decisions of Alabama pertaining to descent of property by illegitimate children and leaves corrective measures, if any, to the legislature.
 "IT IS, THEREFORE, ORDERED AND ADJUDGED BY THE COURT AS FOLLOWS:
 "1. That Phyllis Everage does not have any interest in the real estate of Paul Lamar Gibson and is not entitled to any proceeds of the sale of lands for division among joint owners held April 14, 1978, and her claims for relief in the original and amended complaint, separately and severally, are denied.
 "2. That Phyllis Everage is not entitled to vacate the judgment of sale and order of confirmation. Motion to vacate is denied."
The issue on this appeal, raised at trial by amendment to appellant's intervention complaint, is whether the system relating to intestate succession in Alabama[1] violates equal protection of the law guaranteed by the fourteenth amendment to the United States Constitution and §§ 1 and 35 of the Alabama Constitution, by invidiously discriminating on the basis of illegitimacy.[2] We find no equal protection violation with respect to either the United States or Alabama Constitutions.
At the outset, we note that the trial court made no finding that appellant was or was not biologically related to Paul Lamar Gibson, deceased. The appellees argue that a finding that she is not the decedent's daughter should be presumed from the judgment, and that she therefore may not attack the constitutionality of the statutes of descent and distribution on this appeal because of lack of "standing."
Our rule is that, where the trial judge does not make express findings of fact, this Court will assume that he found facts necessary to support his judgment, unless the finding would be clearly erroneous and against the great weight and preponderance of the evidence. Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975). It is apparent from the wording of the judgment quoted above that a finding that appellant was not biologically related to the decedent is unnecessary to support the result reached. We need not presume that the trial judge made such a finding, and, therefore, appellant is not precluded on this ground from asserting her constitutional argument because of lack of "standing."[3] *Page 832 
Appellant contends, on this appeal, that our review of this case is controlled by Trimble v. Gordon, 430 U.S. 762,97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). We disagree. To the contrary, we find that our statutory system is more akin to the New York statute held constitutional in Lalli v. Lalli, 439 U.S. 259,99 S.Ct. 518, 58 L.Ed.2d 503 (1978).
In Trimble, the United States Supreme Court declared unconstitutional an Illinois statute which provided that an illegitimate child could inherit from his mother, but could inherit from his father by intestate succession only if the child's parents married and the father acknowledged the child as his own. The father in Trimble had neither married the mother nor acknowledged the child as his daughter, but he had been found to be her father in a paternity suit. The Illinois courts nevertheless excluded the child as a distributee of her father's estate, based upon the statute. The United States Supreme Court reversed, holding that the statute discriminated against illegitimate children in violation of the equal protection clause of the fourteenth amendment. The classification was found not to be substantially related to a permissible state interest. Because the statute unnecessarily restricted its operation to circumstances where both acknowledgment and marriage of the parents existed, it was constitutionally flawed and ignored "some significant categories of illegitimate children of intestate men [whose] inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws." 430 U.S. at 771,97 S.Ct. at 1465, 52 L.Ed.2d at 40.
Subsequently, in Lalli, the Court concluded that a New York intestate succession statute did not violate the equal protection clause of the fourteenth amendment. That statute provides that an illegitimate child may not inherit from his father unless the paternity of the father is declared by a court during the father's lifetime.[4] The procedural requirements placed on illegitimate children by this statute were found to bear a reasonable relationship to the substantial state interest of providing for the just and orderly disposition of intestate property.
As Mr. Justice Powell, writing the plurality decision for the Court in Lalli, so clearly points out, "The primary state goal underlying the challenged aspects of § 4-1.2 is to provide for the just and orderly disposition of property at death. We long have recognized that this is an area with which the States have an interest of considerable magnitude." He continues, "This interest is directly implicated in paternal inheritance by illegitimate children because of the peculiar problems of proof that are involved. Establishing maternity is seldom difficult." On the other hand, "[p]roof of paternity, by contrast, frequently is difficult when the father is not part of the formal family unit. `The putative father often goes his way unconscious of the birth of a child. Even if conscious, he is very often totally unconcerned because of the absence of any ties to the mother. Indeed the mother may not know who is responsible for her pregnancy.'" Mr. Justice Powell alludes to the difficulties of serving an illegitimate with process in the course of probating a will and poses this query from the New York case of In re Flemm, 85 Misc.2d 855, 859, 381 N.Y.S.2d 573,575-76 (Sur.Ct. 1975): "`How does one cite and serve an illegitimate of whose existence neither family nor personal representative may be aware?'" Moreover, "`And of greatest concern, how [to] achieve finality of decree in any estate when there always exists the possibility however remote of a secret illegitimate lurking in the buried past of a parent or an ancestor of a class of beneficiaries?'" Mr. Justice Powell points out that the accurate resolution of claims to paternity is enhanced "by placing paternity disputes in a judicial forum during the lifetime of the father." Requiring the order to *Page 833 
be issued during the father's lifetime, he suggests, "permits a man to defend his reputation against `unjust accusations in paternity claims,'" and, therefore, "[f]raudulent assertions of paternity will be much less likely to succeed. . . ." Lalli, supra, 439 U.S. at 268-271, 99 S.Ct. at 524-26,58 L.Ed.2d at 511-13.
The provisions setting out the order of intestate succession to real estate in Alabama are found in Code 1975, § 43-3-1. Real estate descends first to the children of the intestate, or their descendants. "Children," as used in this statute, has been held to mean legitimate children. Williams v. Witherspoon,171 Ala. 559, 55 So. 132 (1911). Section 43-3-7 provides that every illegitimate child is considered to be the heir of his mother. The effect of this section is to make an illegitimate child the "heir of his mother as if he were born in lawful wedlock; that is, fully legitimates him for the purpose of heirship and succession." Foster v. Lee, 172 Ala. 32,55 So. 125 (1911).
We have concluded that there are three situations in Alabama in which a child born out of wedlock may inherit from his intestate father, short of having been adopted by the father. In the first, the child is "legitimated" by the marriage of the parents and recognition of the child by the father as his own. Code 1975, § 26-11-1. Recognition must be unambiguous and clear in its character. Howard v. Pike, 290 Ala. 213, 275 So.2d 645
(1973).
In the second, the child is "legitimated" by the father'swritten declaration, attested by two witnesses, which is filed in the office of the probate judge. Code 1975, § 26-11-2.
The third situation is a "judicial determination of paternity." Code 1975, §§ 26-12-1 et seq. Although the statutory scheme subsumes the use of the state to prosecute the action with the putative father as defendant,[5] the proceeding itself is civil in nature, and the measure of proof to establish paternity is identical to that in other civil cases.Keener v. State, 347 So.2d 398 (Ala. 1977). The basic purpose of the paternity statute is to judicially determine the paternity of an illegitimate child. State ex rel. Moore v.Strickland, 289 Ala. 488, 268 So.2d 766 (1972). Once paternity is determined, the defendant is considered "to be the father of such child and thenceforth shall be subject to all obligations for the care, maintenance and education of such child [the same as] the father of a legitimate child of like age and capacity." Code 1975, § 26-12-4.
Although Alabama case law has not previously recognized that the child is "legitimated" by this proceeding, we find that the judgment of paternity serves the same state purpose as "legitimation" in establishing the right to intestate succession. Thus, the statement by this Court in Moore v.Terry, 220 Ala. 47, 124 So. 80 (1929), that a "bastard who is not legitimated may only of course inherit from his mother or her descendants, even though his paternity is satisfactorily shown," is too broad and is expressly disapproved.
We hold that the adjudication of paternity in a proceeding under § 26-12-1 et seq. is sufficient state expression by which to obtain the legitimation of an illegitimate child in order that it may inherit from the intestate father's estate in the same manner as a legitimate child.
Even in Trimble, the United States Supreme Court recognized that
 ". . . Sherman Gordon was found to be the father of Deta Mona in a state court paternity action prior to his death. On the strength of that finding, he was ordered to contribute to the support of his child. That adjudication should be equally sufficient to establish Deta Mona's right to claim a child's share
of Gordon's estate, for the State's interest in the accurate and efficient disposition of property at death would not be compromised in any way by allowing her claim *Page 834 
in these circumstances. . . ." [Emphasis supplied.]
430 U.S. at 772, 97 S.Ct. at 1466, 52 L.Ed.2d at 40-41.
Thus, we find that Alabama's statutory system regarding illegitimate children and intestacy bears a substantial relation to the purpose of the entire statutory system governing descents and distribution. That purpose is to provide for the orderly and certain distribution of an intestate's property with as little delay as is compatible with a just determination of the extent of property to be distributed, the rights of those who are to receive the property, and the claims of others to the estate. Long ago we abandoned as one of the purposes of this system the common law basis for excluding illegitimates from inheritance, which is to discourage illicit sexual intercourse. Butler v. Elyton Land Co., 84 Ala. 384,4 So. 675 (1888).
Our statutes seek to avoid the uncertainty and potential for fraud inherent in permitting a person to claim paternity on the part of the intestate after the purported father has died and, in many instances, decades after the alleged child's birth.
To summarize, in order to claim the right to inherit from the intestate father's estate, a child born out of wedlock may prove legitimation by the marriage of his parents plus a clear and unambiguous recognition of the child by the father. Or, such child may introduce a written, attested, and fileddeclaration of legitimation. Finally, the child may show ajudicial determination of paternity made within two years of birth and during the father's lifetime.
We believe such a system as we have delineated adequately deals with the "peculiar problems of proof" encountered in establishing paternity and works "to ensure the accurate resolution of claims of paternity and to minimize the potential for disruption of estate administration," as pronounced in the latest United States Supreme Court decision in Lalli, supra,439 U.S. at 271, 99 S.Ct. at 526, 58 L.Ed.2d at 513.
In the instant cause, the record discloses no proof of either of the first two alternatives, although both were viable subsisting legal methods of obtaining "legitimation" during the intestate's lifetime. There was no proof of a judicial determination of paternity obtained during the intestate's lifetime. The only proof offered was an attempt to show "recognition" by the intestate.
There remains for consideration the applicability of the judicial declaration which we make today that a judicial determination of paternity under Code 1975, § 26-12-1, et seq., passes constitutional muster against the claim made under the "equal protection" clause and is in accord with the most recent pronouncements of the United States Supreme Court in the decisions of Trimble and Lalli, supra. Since appellant offered no proof of a judicial determination of paternity (under the then subsisting "bastardy statutes," i.e., Tit. 6, Code of Alabama 1940, in large measure correlative to our present §26-12-1, et seq.), the issue as to whether she can claim the benefit of our declaration today of the third alternative is not before us.
For the foregoing reasons, this cause must be affirmed. The motion to dismiss the appeal filed by some of the appellees who were purchasers at the sale for division is overruled.
MOTION TO DISMISS APPEAL OVERRULED.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
FAULKNER and JONES, JJ., dissent.
[1] The statutes in question are Code 1975, §§ 26-11-1, 26-11-2,26-12-1 to -9, 43-3-1, and 43-3-7.
[2] Although appellant contended at trial that the statutory system also invidiously discriminates on the basis of sex, this contention has not been renewed on appeal.
[3] Thus, there is no issue here of "standing" as there was inColeman v. Sparkman, 377 So.2d 977 (Ala. 1979).
[4] The New York statute required that such action be brought within two years of the birth of the child, just as Alabama requires. See Note 5.
[5] This action must be commenced within two years of the birth of the child. Code 1975, § 26-12-7. The constitutionality of this limitation is not questioned on this appeal, nor was it an issue in Lalli. See 439 U.S. at 267 n. 5, 99 S.Ct. at 524 n. 5,58 L.Ed.2d at 510 n. 5.