Amanda HANDLEY, By and Through her mother and next friend, Patricia HERRON, Plaintiff-Appellant,

v.

Richard SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.

No. 82–7114
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Feb. 10, 1983.

O'Rear, Robinson & Nelson, Pat Nelson, Wilson & King, Jasper, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Birmingham, Ala., for defendant-appellee.

Before RONEY, VANCE and ANDERSON, Circuit Judges.

VANCE, Circuit Judge:

Appellant, by and through her mother as next friend, appeals from the decision of the district court affirming the decision of the Secretary of Health and Human Services denying her application for child's insurance benefits under section 202(d)(1) of

the Social Security Act as amended, 42 U.S.C. § 402(d)(1). Appellant argues that: (1) the Alabama intestacy scheme is unconstitutional as applied to her and (2) but for its unconstitutionality she would be entitled to child's benefits under 42 U.S.C. § 416(h)(2)(A).[1] This provision entitles children born out of wedlock to inherit under "such law as would be applied to determining the devolution of intestate personal property" by the courts of the state in which the father was domiciled at the time of death.

### (1)

Because we need reach the constitutional question only if it would be dispositive of appellant's right to receive child's benefits, we consider appellant's second contention first. We find this issue is controlled by our recent decision in *Cox v. Schweiker,* 684 F.2d 310 (5th Cir. Unit B 1982). In *Cox,* an illegitimate child was denied child's benefits under the Social Security Act because he did not qualify as a distributee under the Georgia intestacy laws in force at the time of his application. We found these laws to deny equal protection because they denied one group of illegitimate children the benefits of inheritance from their father's estates. We further held that the appropriate remedy is to grant "the illegally deprived class of illegitimate children ... the benefits of inheriting the same as legitimate children in similar circumstances." *Id.* at 317.

> When a statute conferring benefits on a certain class of persons is held unconstitutional due to a violation of the equal protection clause, then the unlawful discrimination or classification must be eradicated ... where a sovereign intentionally conferred some type of benefit upon one group and thereby unconstitutionally deprived another, the normal judicial remedy is to extend the benefits to the deprived group.

*Id.*

Because one of the benefits conferred by qualification under the laws of intestate distribution is the right to receive child's

benefits under the Social Security Act, we found Cox was entitled to receive such benefits under section 416(h)(2)(A) regardless of whether he qualified under any of the alternative provisions of section 416. Similarly, if the Alabama intestacy scheme is unconstitutional as to appellant we must rectify the unconstitutionality by granting her child's benefits under section 416(h)(2)(A).

Under Alabama law, there are three means by which an illegitimate child may inherit from an intestate father short of adoption by the father. *Everage v. Gibson,* 372 So.2d 829, 833 (Ala.1979), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1322, 63 L.Ed.2d 765 (1980). The father may marry the mother and recognize the child as his own. Ala. Code § 26–11–1 (1975). The father may legitimate the child by following the statutory procedure for legitimation by written declaration. Ala.Code § 26–11–2 (Supp. 1982). The court may make a judicial determination of paternity. Ala.Code §§ 26–12–1, et seq. (1975).

Appellant was unable to qualify under any of these provisions. Her father was fatally injured in an automobile accident and fell into a coma some four months before her birth. He remained in the coma until his death some four months after her birth. Obviously, he could not have married the mother or acknowledged the child by written declaration. Nor did appellant have a meaningful opportunity to be legitimated through a paternity proceeding, which, under Alabama law, must be maintained during the father's lifetime. *See Everage v. Gibson,* 372 So.2d 829 (Ala.1979), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1322, 63 L.Ed.2d 765 (1980). Alabama's intestacy scheme effectively denied appellant any means through which to become legitimated or qualify herself to inherit from her father's estate.

Our constitutional analysis of this *de facto* prohibition is guided by the reasoning of the Supreme Court in *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d

---

**1.** Both the appellant and appellee waived oral argument.

770 (1982). Since the seminal decision in *Levy v. Louisiana,* 391 U.S. 73, 88 S.Ct. 1519, 20 L.Ed.2d 436 (1968), the Supreme Court has evolved two tests for determining the rights of illegitimate children: the "insurmountable barrier" test, *Gomez v. Perez,* 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973); *Labine v. Vincent,* 401 U.S. 532, 539, 91 S.Ct. 1017, 1021, 28 L.Ed.2d 288 (1971); and the less stringent "substantial relationship" test, *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); *Trimble v. Gordon,* 430 U.S. 762, 772–774, 97 S.Ct. 1459, 1466–1467, 52 L.Ed.2d 31 (1977). In *Mills,* the Court applied both tests to a Texas statute which required that a paternity proceeding be maintained within one year of the child's birth. Like the Alabama intestacy scheme, the Texas statute effectively blocked legitimation by imposing a time limit upon the initiation of paternity proceedings with which it was, for all practical purposes, impossible to comply. The Court found the statutory provision to be unconstitutional under both the insurmountable barrier and substantial relationship tests. Applying the *Mills* reasoning to the effectively similar facts of this case, we are compelled to reach a similar result.

(2)

■ Under the insurmountable barrier test, a statutory scheme which makes the status of illegitimacy an insurmountable obstacle to the vindication of rights or the receipt of benefits constitutes a denial of equal protection. In *Mills v. Habluetzel,* 102 S.Ct. at 1551, the Court held that the test must be applied practically—not formalistically:

> If ... equal protection principles are to have any meaning ... [t]he period for asserting the right ... must be sufficiently long to permit those who normally have an interest in such children to bring an action on their behalf despite the difficult personal, family, and financial circumstances that often surround the birth of a child outside of wedlock. It would hardly satisfy the demands of equal protection ... to remove an "impenetrable barrier" ... only to replace it with an opportunity so truncated that few could

utilize it effectively.... [T]he period for obtaining [relief] ... must be sufficiently long in duration to present a reasonable opportunity for those with an interest in such children to assert claims on their behalf.

*Mills v. Habluetzel,* 102 S.Ct. at 1553, 1555 (emphasis added).

The Court's holding was based upon the practical difficulties which ordinarily beset an unwed mother during the first year:

> Financial difficulties caused by childbirth expenses or a birth-related loss of income, continuing affection for the child's father, a desire to avoid disapproval of family and community, or the emotional strain and confusion that often attend the birth of an illegitimate child all encumber a mother's filing of a paternity suit within twelve months of birth.

*Id.,* at 1555.

These arguments are even more compelling on the facts presented here. Heaped upon the problems listed by the *Mills* Court are serious additional concerns including emotional turmoil over the father's death and sudden, unexpected financial uncertainty caused by the loss of an actual or potential family income earner. The unwed mother here had at most four months during which to sue—virtually no time at all with which to cope with the disruption caused by her child's birth and by the fatal illness of the child's father.

■ The subclass of illegitimate children who are conclusively denied benefits because of the "during the lifetime" requirement may be numerically small, but that does not make it less deserving of constitutional protection. A law may violate the constitutional guarantee of equal protection when it conclusively denies to one subclass of illegitimates benefits which are potentially available to another subclass. *See Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). In *Weber v. Aetna Casualty and Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), the Supreme Court considered portions of the Louisiana Civil Code which permitted only

illegitimate children who had been legally acknowledged to receive workmen's compensation death benefits on an equal footing with legitimate children. Another provision of the Louisiana Code prohibited the acknowledgement of children whose parents were incapable of contracting marriage at the time of conception. Plaintiff children were forever denied acknowledgement because, at the time they were conceived, their father was still legally married to a woman other than their mother—a woman who was indefinitely confined to a mental institution. The Supreme Court emphasized that it made "no difference" that not all illegitimate children were "absolutely and broadly barred." *Weber v. Aetna Casualty and Surety Co.,* 406 U.S. at 172, 92 S.Ct. at 1405. The Court held the statute unconstitutional because the subclass of unacknowledged illegitimate children was conclusively denied benefits:

> The burdens of illegitimacy, already weighty, become doubly so when neither parent nor child can legally lighten them . . . .
>
> Whatever the merits elsewhere of th[e] contention [that legitimate children are more often dependent upon the father than illegitimate children] it is not compelling in a statutory scheme . . . where the acknowledgement so necessary to equal recovery rights may be unlikely to occur or legally impossible to effectuate.

*Id.* at 171, 173–174, 92 S.Ct. at 1405–1406.

We find the *Weber* facts comparable and the *Weber* reasoning appropriate to the instant case. In *Weber* the plaintiff children were denied workmen's compensation because of a legal prohibition (the marriage of their father to a woman other than their mother at the time of conception) which had nothing to do with their needs or their father's wishes, and which both they and their father were legally powerless to change. Plaintiff here is denied Social Security benefits because of a procedural requirement (that all routes to legitimation are actionable only during the father's lifetime) which has nothing to do with her needs or her father's wishes, and which both she and her father were powerless to change.

■ We hold that because appellant's access to the legal means of legitimation was never effectively open under the Alabama intestacy scheme, the intestacy scheme as applied imposes an unconstitutional insurmountable barrier which denies appellant the equal protection of the laws.

(3)

■ We next apply the substantial relationship test. Under the substantial relationship, or so-called intermediate scrutiny test, classifications based on illegitimacy are invalid if they do not bear an evident and substantial relation to permissible state interests and if they are not carefully tuned to alternative considerations. *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); *Trimble v. Gordon,* 430 U.S. 762, 772, 97 S.Ct. 1459, 1466, 52 L.Ed.2d 31 (1977); *Mathews v. Lucas,* 427 U.S. 495, 504, 513, 96 S.Ct. 2755, 2761, 2766, 49 L.Ed.2d 651 (1976).

The substantial relationship test was developed to cope with situations which denied the equal protection of the laws to illegitimates or subgroups of illegitimates, even though they did not rise to the level of insurmountable barriers. *See Trimble v. Gordon,* 430 U.S. at 773–74, 97 S.Ct. at 1466–67 (1977). As the *Trimble* court observed:

> Traditional equal protection analysis asks whether this statutory differentiation on the basis of illegitimacy is justified by the promotion of recognized state objectives. If the law cannot be sustained on this analysis, it is not clear how it can be saved by the absence of an insurmountable barrier to inheritance under other and hypothetical circumstances.

*Id.* at 773–74, 97 S.Ct. at 1466–67.

The substantial relationship test is a weaker standard than the insurmountable barrier test, developed to extend it, not to replace it. Although the test recognizes that some situations might justify a more demanding standard for illegitimate children, *Trimble v. Gordon,* 430 U.S. at 770, 97

S.Ct. at 1465, the test "is not a toothless one." *Mathews v. Lucas,* 427 U.S. at 510, 96 S.Ct. at 2764. More than a mere showing of rational relationship is required.

We find that, in following *Mills* and applying the substantial relationship test in conjunction with the insurmountable barrier test, the requirement that a paternity proceeding must be maintained during the lifetime of the father must be invalidated.

Because our holding is superficially discrepant with the decision in *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), we first distinguish that case. In *Lalli,* the Supreme Court applied the substantial relationship test to the New York state intestacy scheme which included a provision that an illegitimate child could only inherit from an intestate father if a court of competent jurisdiction had entered an order of filiation declaring paternity during the lifetime of the father. The Court found that the primary goal of the statute was to provide for the just and orderly disposition of property at death, and that the challenged provision substantially related to this interest because it facilitated the giving of notice to eligible distributees and lessened the likelihood of spurious claims.

Because the facts here are critically different, the *Lalli* reasoning does not lead to the *Lalli* result in the instant case. *Lalli* concerned a dispute between private parties over estate distribution. After Lalli's widow had been appointed administratrix, Lalli's adult illegitimate son petitioned for a compulsory accounting, claiming that he and his sister were entitled to inherit from the deceased as his children. The relationship between Lalli the elder and Lalli the younger had been ongoing and longstanding. For example, the son tendered evidence that the father had given notarized consent to his marriage. Ample time had existed, over the years when father and son were both alive, for an appropriate order of filiation to be taken, had either of the Lallis wished to do so.

The provision that the filiation proceeding be maintained during the lifetime of the father, under the facts of *Lalli,* consisted merely of a minor procedural nuisance substantially justified by the state interest in the orderly disposition of estates. Its purpose, and its effect, were analogous to any ordinary statute of limitations which places a time limit on the initiation of actions so that evidentiary accuracy and quietude of title may be assured after the passage of time. The Court thus sustained the provision specifically because it did not effect a "total statutory disinheritance of children born out of wedlock who were not legitimized by the subsequent marriage of their parents." *Lalli v. Lalli,* 439 U.S. at 273, 99 S.Ct. at 527. But, under the facts here, there was, for all practical purposes, no time during which parent and child were simultaneously alive, and consequently no time when a paternity proceeding could have been brought. The erstwhile procedural hurdle became an unconstitutional complete and impenetrable barrier.

In addition, the *Lalli* Court based its decision, in part, on the deference due to the New York state legislature. The challenged statutory scheme had been based upon the results of a comprehensive study and arrived at as the considered compromise between the need to vindicate the rights of illegitimate children and the need to provide procedures for the orderly settlement of estates. The Court stated that the appropriate balance was peculiarly a matter for legislative determination, and observed that the New York courts had interpreted the statute "liberally" where it would have worked a manifest injustice. *Lalli v. Lalli,* 439 U.S. at 273–74, 99 S.Ct. at 527.

By contrast, the requirement that a paternity proceeding be maintained during the lifetime of the father does not appear in the Alabama Code at all. *See* Ala.Code § 26–12–1, et seq. It is an aspect of judge made law which, to the best our research can determine, was first formally stated in *Everage v. Gibson,* 372 So.2d 829 (Ala.1979). *Everage v. Gibson* was decided in the wake of *Trimble* and *Lalli* and concerned a challenge to the Alabama intestacy laws based upon the fact that the language of Ala.Code

§ 43–3–1, which governs intestate inheritance, provided no avenue for inheritance by illegitimate children. The Alabama court was able to sustain the constitutionality of the statute by holding that a paternity proceeding, pursuant to Ala.Code § 26–12–1, et seq. "serves the same state purpose as 'legitimation' in establishing the right to intestate succession." *Everage v. Gibson,* 372 So.2d at 833. To further insulate the intestacy laws against constitutional attack, the Supreme Court of Alabama brought the state intestacy scheme under the *Lalli* umbrella, stating in dicta that "the child may show a *judicial determination of paternity* made within two years of birth and during the father's lifetime." *Id.* at 834 (emphasis in the original). This language echoed the language of the New York provision which had then been recently upheld in *Lalli.* The plaintiff in *Everage v. Gibson* was a middle-aged woman whose father had but recently died. The issue before us now was not present in *Everage,* just as it was not present in *Lalli.*

■ We conclude that after *Mills v. Habluetzel,* it is impossible to hold that appellant's rights are foreclosed by her failure to bring a paternity proceeding during her father's lifetime. The substantial relationship test is a means-ends analysis which requires a balancing of the various state interests involved against the individual rights affected. *Cox v. Schweiker,* at 321; *Mathews v. Lucas,* 427 U.S. at 504, 96 S.Ct. at 2761; *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. at 173, 92 S.Ct. at 1405. Although the state interest in the orderly disposition of estates is identical here and in *Lalli,* the burden imposed is vastly different: a procedural inconvenience in *Lalli,* a total prohibition here.

In *Mills,* the Court held that the:
unrealistically short time limitation is not substantially related to the State's interest in avoiding the prosecution of stale or fraudulent claims ... problems of proof in paternity suits do [not] ... justify a period of limitation which so restricts those rights as effectively to extinguish them. We can conceive of no evidence

essential to paternity suits that invariably will be lost in only one year, nor is it evident that the passage of twelve months will appreciably increase the likelihood of fraudulent claims.

*Mills v. Habluetzel,* 102 S.Ct. at 1555.

■ *Mills* compels the conclusion that because the period of limitation involved here (a maximum of four months) so restricts appellant's rights as to effectively extinguish them, the state interest in orderly estate settlement is insufficient to uphold the requirement that the paternity proceeding be maintained during the father's lifetime.

■ This requirement serves the purposes of facilitating evidentiary accuracy and preventing spurious claims. The lurking problems with respect to proof of paternity are not to be lightly brushed aside. *Gomez v. Perez,* 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973). Yet we find them to be insubstantial here. Undoubtedly, paternity may be more readily proven when the action is maintained during the father's lifetime because of the availability of biological evidence. Blood tests can conclusively disprove paternity and HLA (tissue) tests can conclusively prove paternity without the need for more ordinary forms of testimony. Yet the absence of biological evidence in a posthumous paternity suit works its disadvantages equally on both the putative father and the illegitimate child. Biological evidence is not essential to prove paternity; such suits were decided long before these relatively recent advances in biological testing. Filiation may be established by a satisfactory combination of facts indicating the connection between parent and child. *Weatherford v. Weatherford,* 20 Ala. 548 (1852). The appearance of the putative father in court is not indispensable to a determination. *Trawick v. Davis,* 4 Ala. 328 (1842).

That biological evidence, or the father's presence, is not essential to determine paternity is poignantly illustrated by this case. It comes to us after a judicial determination that the alleged father was, in fact, the real father, had been made by the administra-

tive law judge and sustained by the federal district court judge. These determinations were found insufficient to qualify appellant for benefits only because they were not made within the context of a trial expressly dubbed a "paternity proceeding." We find this paradox to be legally and logically untenable.

Allowance of posthumous paternity determinations to illegitimates in appellant's class will hardly open the floodgates to spurious claims. The limited remedy necessary to bring the Alabama intestacy scheme into comportment with constitutional requirements will scarcely set off a tidal wave of toddlers able to make out a *prima facie* case that they were decedent's illegitimate children, born during or after the final stages of his terminal illness.

■ We make no attempt here to decide the minimal time after the birth of an illegitimate child within which a paternity proceeding must be permitted. It is sufficient to state that, under *Mills,* a time period of less than one year is insufficient as a matter of law. We hold that application of the requirement that paternity proceedings be maintained during the father's lifetime is unconstitutional as applied to illegitimates whose fathers have died within one year after their birth, and who would thereby effectively be barred from receiving child's benefits under section 416(h)(2)(A) because of legal inability to prove paternity. Our holding is limited to the issue presented. We do not suggest that a similar decision would be required where a private estate settlement is in issue or where posthumous paternity proceedings were brought for the purpose of obtaining child support from the father's estate.

■ Although we hold that any valid statute of limitations which might have been applied to appellant has been tolled, we do not remand for further proceedings. In a paternity proceeding, the sole issue before the court is the paternity of the child. *Oliver v. State,* 31 Ala.App. 146, 13 So.2d 891 (Ala.1943). This issue has already been decided by the administrative law judge and affirmed by the federal district court. To require yet a third determination of the matter because resolution of the issue was subsumed in a trial which did not bear the title "paternity proceeding" would be to squander judicial efforts and to redundantly spiral appellant through a technical loophole. Appellant is entitled to receive child's benefits under the Social Security Act, 42 U.S.C. § 416(h)(2)(A).

REVERSED.