Cassandra DANIELS, on Behalf of Adonis Q. DANIELS, her minor child, Plaintiffs–Appellants,

v.

Louis W. SULLIVAN, in his capacity as Secretary of the U.S. Department of Health and Human Services, Defendant–Appellee.

No. 91–8770.

United States Court of Appeals, Eleventh Circuit.

Dec. 30, 1992.

Mark N. Harper, Augusta, Ga., Lisa J. Krisher, Atlanta, Ga., for plaintiffs-appellants.

Henry L. Whisenhunt, Jr., Asst. U.S. Atty., Augusta, Ga., Dennis R. Williams, Office of General Counsel, Bruce R. Granger, Mack A. Davis, James N. Stephens, Atlanta, Ga., for defendant-appellee.

Carol Atha Cosgrove, Sr. Asst. Atty. Gen., Atlanta, Ga., for amicus State of Ga.

Before ANDERSON, Circuit Judge, MORGAN and JOHNSON,* Senior Circuit Judges.

ANDERSON, Circuit Judge:

## I.  INTRODUCTION

For the purposes of determining an illegitimate child's eligibility for survivors ben-

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

efits, the Social Security Act incorporates by reference the intestacy scheme of the state in which the insured was domiciled at the time of his death. *See* 42 U.S.C. §§ 402(d), 416(h)(2)(A). In the case of a Georgia decedent, the Social Security Act incorporates the Georgia intestacy scheme's requirement that an illegitimate child establish paternity during the lifetime of the father. *See* O.C.G.A. § 53-4-4. Appellant Cassandra Daniels, on behalf of her minor son, challenges the constitutionality, as applied, of this requirement.[1]

## II. FACTS

On April 11, 1985, appellant Daniels gave birth to a son, Adonis Quinta Daniels. At the time of Adonis' birth, Daniels was fourteen years old. At all relevant times, Daniels and her son have lived with Daniels' mother, Mattie Daniels.

Daniels claims that Kirby Marshall was Adonis' father. Daniels and Marshall were never married, Marshall never lived with nor provided support for Adonis, and the father's name was not listed on Adonis' birth certificate. Nonetheless, both Daniels' mother and Marshall's mother have stated that Marshall was Adonis' father.

On September 12, 1987, Marshall died in an automobile accident in Harlem, Georgia. At that time, Daniels was sixteen years old, and Adonis was two years, five months old.

## III. PROCEDURAL BACKGROUND

On November 30, 1987, Daniels, on behalf of her son, Adonis, applied for survivors benefits under the Social Security Act. *See* 42 U.S.C. § 402(d). On December 11, 1987, appellee the Secretary of Health and Human Services ("the Secretary") denied the application because Adonis did not satisfy any of the statutory entitlement requirements. *See* 42 U.S.C. § 416(h)(2)-(3). Daniels' request for reconsideration was denied on February 18, 1988, and Daniels then asked for a hearing by an administrative law judge ("ALJ").

On December 9, 1988, an ALJ held an entitlement hearing, subsequent to which Daniels submitted a letter brief raising the issue of the constitutionality of the Georgia intestacy scheme as applied to this case. *See* Daniels Letter Brief at 2-3 (Jan. 11, 1989). On March 28, 1989, the ALJ issued his opinion finding that Adonis was not Marshall's "child" for purposes of 42 U.S.C. § 416(h). Although the ALJ stated that "it appears that Adonis was the child of Kirby Lucias Marshall," he found that Adonis was not Marshall's "child" because § 416(h)(3) "also requires that the deceased wage earner was either living with or contributing to the support of the applicant at the time he died." ALJ Decision at 3 (Mar. 28, 1989). The ALJ also found that Adonis did not satisfy the other definitions of "child" under § 416(h), including the definition that incorporates by reference Georgia's law of intestate succession. *See id.* at 2-3. The ALJ did not address Daniels' constitutional challenge. The Appeals Council subsequently rejected Daniels' request for review of the ALJ's decision.

On October 2, 1989, Daniels filed a complaint in the United States District Court for the Southern District of Georgia arguing, *inter alia*, that the Secretary's application of the Georgia intestacy scheme denied Adonis equal protection of law. The court referred the case to a magistrate judge. On June 10, 1991, the magistrate judge issued a Report and Recommendation affirming the Secretary's findings and rejecting Daniels' constitutional claim. On June 27, 1991, the district court adopted the magistrate's Report and Recommendation.

Daniels filed a timely notice of appeal. On appeal, Daniels argues only that the district court erred in holding that the Sec-

---

1. We point out that this case presents only the question whether the incorporation of Georgia's law into the eligibility requirements for Social Security Act survivors benefits violated Adonis' constitutional rights. We clarify this point because we recognize that the state interests implicated in litigation regarding intestate succession, *see Lalli v. Lalli*, 439 U.S. 259, 268 & n. 6, 99 S.Ct. 518, 524 & n. 6, 58 L.Ed.2d 503 (1978) (plurality opinion) (primary state goal is to provide for just and orderly disposition of property at death), may differ from those involved in disputes over support, *see Mills v. Habluetzel*, 456 U.S. 91, 98, 102 S.Ct. 1549, 1554, 71 L.Ed.2d 770 (1982) (state interest in preventing prosecution of stale or fraudulent claims).

retary's application of the Georgia intestacy scheme did not violate Adonis' right to equal protection of law. Consequently, we deem waived the other issues Daniels raised before the district court. *See Rogero v. Noone,* 704 F.2d 518, 520 n. 1 (11th Cir.1983).

## IV. DISCUSSION

The Social Security Act considers an applicant a "child" for the purposes of receiving survivors benefits if the applicant can establish that he is entitled to inherit from the insured's estate under the laws of the state in which the insured was domiciled at the time of his death. *See* 42 U.S.C. § 416(h)(2)(A). Since Marshall was domiciled in Georgia at the time of his death, the Secretary applied the Georgia intestacy scheme to determine Adonis' eligibility for survivors benefits.[2] Daniels contends that the requirement that paternity be established during the lifetime of the father, as applied to the facts of this case, violated Adonis' right to equal protection of law.

■ The Supreme Court has articulated two tests for assessing the constitutionality of classifications based on illegitimacy. First, under the "insurmountable barrier" test, a statutory scheme denies equal protection if it "makes the status of illegitimacy an insurmountable barrier to the vindication of rights or the receipt of benefits." *Handley, By and Through Herron v. Schweiker,* 697 F.2d 999, 1002 (11th Cir. 1983); *see also Gomez v. Perez,* 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973) (Texas common-law rule that illegitimate children had no right to support from fathers created "impenetrable barrier" denying substantial benefits accorded children generally). Second, under the "substantial relationship" test, a statutory scheme violates equal protection if "classifications based on illegitimacy ... do not

bear an evident and substantial relationship to permissible state interests and if they are not carefully tuned to alternative considerations." *Handley,* 697 F.2d at 1003; *see also Lalli v. Lalli,* 439 U.S. 259, 265, 99 S.Ct. 518, 523, 58 L.Ed.2d 503 (1978) (plurality opinion). As this court observed in *Handley,* 697 F.2d at 1003, "[t]he substantial relationship test is a weaker standard than the insurmountable barrier test, developed to extend it, not to replace it."

The Secretary relies primarily on the Supreme Court's decision in *Lalli* to defend the application of the Georgia intestacy scheme to Adonis' case. In *Lalli,* the Court rejected an equal protection challenge to a New York statute that required an illegitimate child to show an order of filiation entered during his father's lifetime in order to inherit from the father by intestate succession. The Court applied the "substantial relationship" test to the facts in *Lalli* and found that New York had "an interest of considerable magnitude" in providing for the just and orderly disposition of property at death and that "[t]his interest is directly implicated in paternal inheritance by illegitimate children because of the peculiar problems of proof that are involved." 439 U.S. at 268, 99 S.Ct. at 525. The Court also found that the New York statute furthered the state's interest because requiring resolution of paternity disputes during the father's lifetime enhanced accuracy, facilitated administration of the estate, and deterred fraudulent assertions of paternity. *Id.* at 271–72, 99 S.Ct. at 526. Accordingly, although the Court acknowledged that New York's law might appear to operate unfairly as applied to "some illegitimate children who would be able to establish their relationship to their deceased fathers without serious disruption of the administration of estates," *id.* at 272–73, 99 S.Ct. at 527, the Court held that

---

**2.** Georgia law provides that "[a] child born out of wedlock may not inherit from or through his father or any paternal kin by reason of the paternal kinship *unless, during the lifetime of the father and after the conception of the child,*" either (1) a court of competent jurisdiction has declared the child to be legitimate or has entered an order establishing paternity or (2) the

father has signed the birth certificate or executed a signed, sworn statement attesting to paternity. O.C.G.A. § 53–4–4(c)(1) (emphasis added).

A 1991 amendment to the Georgia statute, further liberalizing the circumstances under which an illegitimate child can inherit, does not apply to this case.

the statute satisfied the "substantial relationship" test, *id.* at 275–76, 99 S.Ct. at 528.

Daniels counters that a line of Supreme Court cases beginning with *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982), supports her claim that the Secretary violated equal protection in applying the Georgia intestacy scheme to deny survivors benefits for Adonis. In *Mills,* the Court addressed a constitutional challenge to a Texas statute that required a paternity suit for purposes of obtaining support for an illegitimate child to be brought before the child reached one year of age. The Court analyzed the Texas statute with a two-pronged equal protection inquiry incorporating both the "insurmountable barrier" and "substantial relationship" tests. The Court noted the following:

> First, the period for obtaining support granted by Texas to illegitimate children must be sufficiently long in duration to present a reasonable opportunity for those with an interest in such children to assert claims on their behalf. Second, any time limitation placed on that opportunity must be substantially related to the State's interest in avoiding the litigation of stale or fraudulent claims.

*Mills,* 456 U.S. at 99–100, 102 S.Ct. at 1555.

The Court concluded that "the one-year period for establishing paternity denies illegitimate children in Texas the equal protection of law." 456 U.S. at 101, 102 S.Ct. at 1556. The Court based this conclusion on its observation that

> [f]inancial difficulties caused by childbirth expenses or a birth-related loss of income, continuing affection for the child's father, a desire to avoid disapproval of family and community, or the emotional strain and confusion that often attend the birth of an illegitimate child all encumber a mother's filing of a paternity suit within 12 months of birth.

*Id.* at 100, 102 S.Ct. at 1555. With due regard for the realistic effect of these substantial obstacles, the Court determined that the Texas statute's twelve month period failed the "insurmountable barrier" test because it provided no more than an illusory opportunity for illegitimate children to obtain support. *Id.* 102 S.Ct. at 1555. Furthermore, the Court held that the statute failed the "substantial relationship" test because Texas' interest in avoiding the prosecution of stale or fraudulent claims could not "justify a period of limitation which so restricts [support] rights as effectively to eliminate them." *Id.* at 101, 102 S.Ct. at 1555.

Daniels also points to *Handley.* There this court addressed the issue now before us—i.e., the constitutionality of the Secretary's denial of survivors benefits to an illegitimate child who could not inherit from her intestate father under state law. *See Handley,* 697 F.2d at 1001. Four months before the birth of the child applicant in *Handley,* her father was injured in an automobile accident. The father remained in a coma until his death some four months after the applicant's birth. Under Alabama law—as under the Georgia intestacy scheme—the applicant could not inherit from her intestate father because she had not obtained a judicial determination of paternity during the father's lifetime. *Id.* at 1001.[3]

Despite the Alabama statute's similarity to the New York law approved in *Lalli,* this court held the application of the Alabama intestacy scheme was unconstitutional. The court applied the stringent "insurmountable barrier" test and held that because appellant's access to the legal means of legitimation was never effectively open under the Alabama intestacy scheme, the application of the intestacy scheme imposed an unconstitutional insurmountable barrier which denied appellant the equal protection of the laws. *Id.* at 1003.[4] The court noted

---

**3.** Alabama law also permitted an illegitimate child to inherit from her father through intestate succession if the father married the mother and recognized the child as his own or if the father legitimated the child following a statutory procedure for legitimation by declaration.

*Id.* In *Handley,* none of these events had occurred. *Id.*

**4.** This court distinguished *Lalli* based on the court's conclusion that the Alabama law, as applied to the facts in *Handley,* effectively fore-

that "[t]he subclass of illegitimate children who are conclusively denied benefits because of the 'during the lifetime' requirement may be numerically small, but that does not make it less deserving of constitutional protection." *Id.* at 1002.

■ After careful consideration of the principles enunciated in *Lalli, Mills,* and *Handley,* we conclude that, as applied to this case, the Social Security Act's incorporation of the Georgia intestacy scheme violates equal protection. Although *Handley* declined "to decide the minimal time after the birth of an illegitimate child within which a paternity proceeding must be permitted," 697 F.2d at 1006, subsequent Supreme Court cases suggest that the time period of less than two and one-half years that Daniels had was constitutionally insufficient. In *Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983), for example, the Court held that a Tennessee statute imposing a two-year limitations period on paternity and child support actions on behalf of certain illegitimate children denied those children equal protection.[5] With respect to the "insurmountable barrier" prong of *Mills'* equal protection inquiry, the Court noted the following:

> The obstacles to filing a paternity and child support suit within a year after the child's birth, which the Court discussed in *Mills,* are likely to persist during the second year as well. The mother may experience financial difficulties caused not only by the child's birth, but also by a loss of income attributable to the need to care for the child. Moreover, "continuing affection for the child's father, a desire to avoid disapproval of family and community, or the emotional strain and confusion that often attend the birth of an illegitimate child" may inhibit a mother from filing a paternity suit on behalf

of the child within two years after the child's birth. Justice O'Connor suggested in *Mills* that the emotional strain experienced by a mother and her desire to avoid family or community disapproval "may continue years after the child is born." These considerations compel a conclusion that the 2–year limitations period does not provide illegitimate children with "an adequate opportunity to obtain support."

*Id.* at 12–13, 103 S.Ct. at 2206–07 (citations omitted).

We find little reason to believe that the obstacles the Court held precluded an adequate opportunity to obtain support during the first two years after birth in *Pickett* do not persist into the third year after birth. Therefore, we conclude that, as applied to Daniels' case, where the father died less than two and one-half years after Adonis' birth, the requirement that paternity be established during the lifetime of the father effectively "impose[d] an unconstitutional insurmountable barrier which denie[d] appellant the equal protection of the laws." *Handley,* 697 F.2d at 1003; *see also Clark v. Jeter,* 486 U.S. 456, 463, 108 S.Ct. 1910, 1915, 100 L.Ed.2d 465 (1988) (noting without deciding that "[e]ven six years does not necessarily provide a reasonable opportunity to assert a [support] claim on behalf of an illegitimate child"); *cf. Hart, By and Through Morse v. Bowen,* 802 F.2d 1334 (11th Cir.1986) (rejecting as applied challenge to Alabama intestacy statute where child was eight years old at time of father's death). Daniels was further impeded in vindicating her son's rights by the fact that she was a minor, an obstacle that a unanimous Supreme Court recognized as exacerbating the other problems facing the mother of an illegitimate child.

---

closed *any* opportunity for the applicant to seek survivors benefits. The court noted that, in *Lalli,* the illegitimate child—who was already married at the time of his suit to compel an accounting of his father's estate, *see Lalli,* 439 U.S. at 262–63, 99 S.Ct. at 523—had ample time to obtain an appropriate order of filiation, while, in *Handley,* 697 F.2d at 1004, "there was, for all practical purposes, no time during which parent and child were simultaneously alive."

5. The limitations period did not apply if "paternity has been acknowledged by the father in writing or by the furnishing of support." *Id.* at 3 n. 1, 103 S.Ct. at 2201 n. 1 (citing Tennessee Code Ann. § 36–224(2) (1977)). In addition, the statute permitted a suit "in behalf of any child under the age of eighteen (18) who is, or is liable to become a public charge." *Id.* 103 S.Ct. at 2201 n. 1 (citing Tennessee Code Ann. § 36–224(2) (1977)).

*See Clark*, 486 U.S. at 463, 108 S.Ct. at 1915. Thus, we conclude that the Secretary's requirement that Adonis establish paternity in less than two and one-half years constituted an insurmountable barrier that violated Adonis' right to equal protection of law.

The Secretary contends that *Lalli* is controlling and that the Supreme Court cases upon which we rely—*Mills, Pickett,* and *Clark*—are inapposite because they involve claims for child support, whereas this case involves the constitutionality of an intestacy statute. We reject this argument because, as noted above, *see supra* note 1, we construe this case as a challenge to the Secretary's requirement that Adonis establish paternity within two and one-half years, a requirement resulting from the incorporation of the Georgia intestacy scheme into the eligibility rules for Social Security Act survivors benefits. This case challenges this particular eligibility requirement of the Social Security Act, not the constitutionality of the Georgia statute. Since the primary purpose of survivors benefits is to provide support for dependents of a deceased wage earner, *cf. Califano v. Goldfarb*, 430 U.S. 199, 213, 97 S.Ct. 1021, 1030, 51 L.Ed.2d 270 (1977) (plurality); *Mathews v. Lucas*, 427 U.S. 495, 507, 96 S.Ct. 2755, 2763, 49 L.Ed.2d 651 (1976); *Jimenez v. Weinberger*, 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363 (1974), we conclude that the governmental interests implicated in this case—i.e., "preventing the prosecution of stale or fraudulent claims," *Mills*, 456 U.S. at 98, 102 S.Ct. at 1554—are similar to those involved in other disputes over support. Thus, this case is more analogous to *Mills, Pickett* and *Clark* than to *Lalli*. Unlike *Lalli*, this case does not involve a state's interest in the orderly disposition of property at death.[6]

The district court erred in concluding that, because there were opportunities for Marshall voluntarily to legitimate Adonis, the requirement Daniels challenges did not create an insurmountable barrier to the establishment of paternity. Supreme Court precedent indicates that access to benefits and the status of legitimacy through the natural father's voluntary acts cannot cure a statute's failure to provide adequate means for the illegitimate child to establish paternity himself. In *Pickett*, for example, the Court held that Tennessee's two-year limitations period for illegitimate children to enforce paternal support violated equal protection, even though the statute created exceptions to this limitation if the father provided support for the child or acknowledged his paternity in writing. Although a voluntary act by the father could open the door for an illegitimate child to enjoy the same rights to support as a legitimate child, the Court still concluded that, "[f]or the illegitimate child whose claim is not covered by one of the exceptions in the statute, ... the 2–year limitations period severely restricts his right to paternal support." *Pickett*, 462 U.S. at 12, 103 S.Ct. at 2206. *See also Cox v. Schweiker*, 684 F.2d 310 (5th Cir. Unit B 1982).

Having concluded that the Secretary violated Adonis' right to equal protection of law by requiring that he establish paternity in less than two and one-half years, we now consider the "remedy necessary to bring the ... scheme into comportment with constitutional requirements...." *Handley*, 697 F.2d at 1006. In *Cox*, 684 F.2d at 317, the former Fifth Circuit noted that "[w]hen a sovereign has intentionally conferred some type of benefit upon one group and thereby unconstitutionally deprived another, the normal judicial remedy is to extend the benefits to the deprived group." In both *Cox*, 684 F.2d at 324, and *Handley*, 697 F.2d at 1006, the courts applied this general principle and held that the child applicant was entitled to receive survivors benefits.[7] Accordingly, we hold that Adon-

---

6. We reiterate that we do not hold the Georgia intestacy statute unconstitutional. Rather, we hold that the Secretary's determination of eligibility for Social Security survivors benefits was unconstitutional.

7. The *Cox* and *Handley* courts did not remand for resolution of the paternity issue since, in both cases, an ALJ had already determined that the insured deceased was the natural father of the child applicant for survivors benefits. *See Handley*, 697 F.2d at 1005–06; *Cox*, 684 F.2d at

**1522**

is is entitled to receive benefits under 42 U.S.C. § 416(h)(2)(A).

For the foregoing reasons, we conclude that, as applied to the facts of this case, the Secretary's requirement that Adonis establish paternity within two and one-half years violated Adonis' right to equal protection of law and that Adonis is entitled to receive survivors benefits under the Social Security Act. Accordingly, we REVERSE the decision of the district court.

REVERSED.

323–24. Similarly, we see no need to remand for a determination of paternity in Daniels' case since the ALJ found that Adonis actually was Marshall's son, *see* ALJ Decision at 3 (Mar. 3, 1989) (denying benefits solely because Adonis did not satisfy the Social Security Act's definition of "child"), and the Secretary does not dispute this finding on appeal.