The question in this appeal is whether Code of 1975, §43-8-48 (2)b., allows paternity to be proved by an illegitimate child after the death of an intestate father. We hold that the statute does allow paternity to be proven after the father's death.
The appellant, John Cotton, Jr., is the legitimate son of John Cotton, Sr. Cotton, Jr., brought this suit to quiet title to 160 acres of land located in Montgomery County and owned by Cotton, Sr., at the time of his death. Cotton, Sr., died intestate in 1973 and his estate was never probated.
Cotton, Jr., filed this suit in November 1984. His first complaint prayed for a sale of the land for division of the proceeds, alleging that he owned a one-half interest in it and that the defendant, Nora Jane Terry, owned a one-half interest. In December 1984, however, Cotton, Jr., amended his complaint, deleting the request for a sale for division, and, instead, he sought to quiet title, claiming the land as sole owner.
In due course, an ore tenus hearing was held by the trial court without a jury. By agreement of the parties, the court proceeded to determine whether the defendant, Nora Jane Terry, might inherit under the estate of Cotton, Sr., as his illegitimate child. Following the hearing, the trial court held that under § 43-8-48 (2)b. the defendant had established paternity by clear and convincing evidence and decreed her ownership of a one-half interest in the Cotton, Sr., land.
The appellant, Cotton, Jr., contends that the trial court erred, in light of Murphy v. Murphy, 421 So.2d 1285
(Ala.Civ.App. 1982). He also maintains that the trial court had no "jurisdiction" to decide the defendant's interest. We find both arguments untenable.
Prior to the adoption of § 43-8-48 (2)b., the law of legitimation was as stated in Everage v. Gibson, 372 So.2d 829,833 (Ala. 1979), cert. denied, 445 U.S. 931, 100 S.Ct. 1322,63 L.Ed.2d 765 (1980):
 "We have concluded that there are three situations in Alabama in which a child born out of wedlock may inherit from his intestate father, short of having been adopted by the father. In the first, the child is `legitimated' by the marriage of the parents and recognition of the child by the father as his own. Code 1975, § 26-11-1. Recognition must be unambiguous and clear in its character. Howard v. Pike, 290 Ala. 213, 275 So.2d 645 (1973).
 "In the second, the child is `legitimated' by the father's written declaration, attested by two witnesses, which is filed in the office of the probate judge. Code 1975, § 26-11-2. [The third situation, `judicial determination of paternity,' is not relevant here.]" (Emphasis added in Everage.)
However, in 1982, the legislature adopted the Alabama version of the Uniform *Page 1079 
Probate Code, which became effective on January 1, 1983. Ala. Acts 1982, Act 82-399, pp. 578-603. Part of that uniform code, now codified at § 43-8-48, Code of 1975, in its pertinent part, states:
 "(2) In cases not covered by subdivision (1) of this section [not relevant here], a person born out of wedlock is a child of the mother. That person is also a child of the father, if:
 "`a. The natural parents participated in a marriage ceremony before of after the birth of the child, even though the attempted marriage is void; or
 "`b. The paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof, but the paternity established under this paragraph is ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as his, and has not refused to support the child." (Emphasis added.)
Thus, it may be seen from the plain language of the statute that paternity of an illegitimate child may be establishedafter the death of the father through an adjudication supported by clear and convincing evidence. When so established, such a child may inherit from the father through intestate succession.
The commentary following § 43-8-48 explains:
 "With regard to inheritance rights of illegitimate children, Alabama law was not changed as the rights relate to the mother. If the father attempts to legitimate the child through a marriage to the mother, Alabama law was not changed, but may be clarified slightly by this section. The rights of a child born out of wedlock to inherit from a father go farther than prior Alabama statutes, but the law codified here is consistent with recent Alabama case law. See, Everage v. Gibson, 372 So.2d 829
(Ala. 1979); Shelly v. Woodyard, 382 So.2d 516
(Ala. 1980). The difference in the codification in this section and prior Alabama case law is that there is no time limitation in this section on when a child may attempt to establish paternity against the father except that the adjudication must be before the father's death. The case law in Alabama at the time of the enactment of this chapter was that paternity must be established during the father's lifetime and within two years of birth. Everage v. Gibson, 372 So.2d 829 (Ala. 1979); Shelly v. Woodyard, 382 So.2d 516 (Ala. 1980). Because there are serious reservations about the constitutionality of the two-year limitation, it has not been made a part of this section."
(See State v. Martin, 437 So.2d 1311 (Ala.Civ.App. 1983), andAbrams v. Wheeler, 468 So.2d 126 (Ala. 1985), holding the two-year limitations period in Code of 1975, § 26-12-7, violative of the Fourteenth Amendment to the United States Constitution.)
Contrary to the interpretation given to (2)b. above by the authors of the commentary, however, the literal language of the section ultimately enacted by the legislature is as the trial court applied it and needs no interpretation.
The record supports the trial court's finding of clear and convincing evidence that Cotton, Sr., was the father of Nora Jane Terry. Cotton, Jr., himself testified so on direct examination:
 "Q. Did you — Mr. Cotton, at any time, did you know of any outside children that your father might have had?
 "A. Yes. I have heard of outside children. Nora Terry."
And, Cotton, Jr., testified on cross-examination:
 "Q. Mr. Cotton, are you saying that Nora is not your half sister?
 "A. No. I am not saying that Nora is not my half sister. She could be my half sister, you know.
 "THE COURT: I think you said that you understood she was an outside child of my [sic] father.
"THE WITNESS: Outside child of my father.
". . . . *Page 1080 
 "A. Well, I always heard my father — I mean my father say Nora was his daughter. I never heard my father deny Nora.
 "Q. He did say — Your Father did say that was his daughter?
 "A. I never heard him say Nora won't [sic] his daughter.
"Q. But you did hear him say she wasn't?
 "A. No. I take that back. I never heard him say that, but he never did deny Nora.
". . . .
 "Q. So he didn't deny that, but in other words, what did he say?
"A. He called her Nora.
 "Q. What was his relationship? What did he say? Friend? Neighbor? What relationship did he go by?
 "A. I guess if anyone would have asked him, I guess he would have said Nora is my daughter.
 "Q. But in other words, you are saying that you weren't sure of that?
"A. No. I am not saying I wasn't sure.
". . . .
 "THE COURT: He said that Nora was his — his daddy said she was his daughter.
"THE WITNESS: Right.
 "Q. (By Mr. Cameron) Did you recognize her as your half sister because of that?
 "A. She — I guess you would call it my sister. I mean — you know. In other words, she was an outside child, and she was my sister.
"Q. But you recognized her as your half sister?
"A. Yeah. Half sister."
Also, a newspaper obituary concerning Cotton, Sr., was introduced into evidence identifying Nora Jane Terry as a surviving daughter. Cotton, Jr., testified:
"A. That is the notice in the paper; yes.
 "Q. And do you remember who put that in when your father died?
 "A. My father (sic) [apparently meaning his mother] put that in, I believe."
Cotton, Jr., acknowledged that Nora went by the name "Cotton" before she married:
"A. Yes. Nora has been married.
 "Q. Okay. You know that. Do you know what her maiden name was?
"A. Terry.
"Q. Isn't that her married name?
"A. Married name is Terry.
"Q. What did she go by when she was young?
"A. Cotton."
Walter Bivens, a witness for the plaintiff, testified that his neighbor, Cotton, Sr., had an "outside" daughter:
 "Q. Did you know of Mr. Cotton to have any children?
 "A. Well, that one at home and that one on the side. I know when it all happened. I know when it was born.
". . . .
 "THE COURT: Was it pretty well known that that lady was an outside daughter?
"THE WITNESS: Yes, sir."
The defendant, Nora Jane Terry, testified that she was the child of Cotton, Sr., and of Hattie Love (Mays) Smith. In fact, the undisputed evidence of all the witnesses, including that of the plaintiff, established that Cotton, Sr., recognized the defendant as his child and held himself out as her father. That undisputed evidence proves that Cotton, Sr., was the father of Nora Jane Terry.
Concerning the plaintiff's argument pertaining to the trial court's jurisdiction, there is nothing in the record to impeach the trial court's express finding that the parties agreed to an adjudication of Nora Jane Terry's right to inherit under the estate of Cotton, Sr. Parties may agree to try their case upon a theory of their choosing and their agreements will be binding. Reese Funeral Home v. Kennedy Electric Co.,370 So.2d 1030 (Ala.Civ.App. 1979); Rule 47, A.R.A.P. Plaintiff has not *Page 1081 
presented any evidence which would negate the trial court's finding that the parties expressly agreed to try defendant's right to inherit in these proceedings. That being the case, we find no deficiency in the trial court's proceedings.
Following the filing of this appeal and the briefs in regard to it, the defendant, Nora Jane Terry, filed in this Court a "Suggestion of Death and Motion for Relief by Dismissal." This motion alleged that Cotton, Jr., had died, that no evidence of a will had been found, and that Nora Jane Terry was, as his half-sister, his only relative and therefore was entitled to his entire estate. Shortly thereafter, the attorney for Cotton, Jr., filed a response to that motion acknowledging the death of Cotton, Jr., but alleging that a last will of Cotton, Jr., naming James Mapson as his beneficiary, had been filed for probate.
The decision of this Court reaches only Nora Jane Terry's interest in the estate of Cotton, Sr. We have nothing before us on the matter of the estate of Cotton, Jr., since we have reviewed only the matter considered by the trial court below. Thus, we cannot presume, based upon any alleged probate proceedings pertaining to the estate of Cotton, Jr., to determine at this point the parties who would be interested in the estate of Cotton, Jr. The effect of our holding in the case before us must be applied in any such probate proceeding.
The defendant's motion to dismiss is overruled.
Let the judgment be affirmed.
AFFIRMED.
All the Justices concur.