PITTMAN, Judge.
Jean Clemons appeals from a judgment in a sale-for-division action insofar as the judgment determined that Raymond Mitchell (“Raymond”), deceased, was the father of Justine Howard (“Justine”) and that Justine is the owner of an undivided one-half interest in 102 acres of real property in Choctaw County (“the property”). We reverse and remand with instructions.
Raymond and his brother, Jessie Mitchell (“Jessie”), deceased, each owned an undivided one-half interest in the property when Raymond died intestate in 1975. *740 Jessie died testate in 1989, and his will was probated. In 2010, Justine sued Clemons and other persons who were potential devi-sees of Jessie’s undivided one-half interest in the property. Justine alleged that Raymond’s undivided one-half interest in the property had passed to her by intestate succession upon his death in 1975 because, Justine alleged, she was Raymond’s only child.[1] Justine also alleged that the property could not be equitably partitioned and sought a judgment ordering a sale of the property and a division of the proceeds of the sale among the owners of the property. Clemons and the other defendants answered Justine’s complaint with a general denial but did not plead any affirmative defenses.
The trial court received evidence ore tenus at a trial that began in March 2011 but was recessed after one day of testimony and concluded in October 2011. The issues tried were (1) whether Raymond was Justine’s father, (2) who was the owner of the undivided one-half interest in the property Raymond had owned when he died, (3) who were the owners of the undivided one-half interest in the property Jessie had owned when he died, and (4) whether the property could be equitably partitioned.[2] In January 2012, the trial court entered a judgment finding that Raymond was Justine’s father; finding that Raymond’s undivided one-half interest in the property had passed to Justine by intestate succession when Raymond died in 1975 and, therefore, that she was the owner of that undivided one-half interest in the property; finding that Clemons and one of the other defendants owned the other undivided one-half interest in the property; finding that the property could not be equitably partitioned; and ordering that the property be sold and the proceeds of the sale divided among the owners. The portion of the judgment pertinent to this appeal stated:
“1. Plaintiff Justine Howard is the owner of an undivided one-half (1/2) interest in the [property], having inherited this interest from her father, Raymond Mitchell. Although [Justine’s] mother was never married to Raymond Mitchell, the Court finds that, pursuant to Code of Ala.1975, § 26-17~m(a)(5), Raymond Mitchell, openly held out Justine Howard as his natural child and established a significant parental relationship with her by providing emotional and financial support for her, thus creating a presumption of paternity, which was not rebutted by any competent, admissible evidence submitted by the Defendants.”
(Emphasis added.)
Clemons timely filed a Rule 59, Ala. R. Civ. P., motion to alter, amend, or vacate *741 the judgment or, in the alternative, to grant a new trial (“the postjudgment motion”).[3] Among other things, the post-judgment motion asserted that the trial court should alter, amend, or vacate the judgment because, Clemons said, § 26-17-204(a)(5), Ala.Code 1975,[4] which is a part of the Alabama Uniform Parentage Act (2008), § 26-17-101 et seq., Ala.Code 1975 (“the 2008 AUPA”), did not apply to the determination whether Raymond was Justine’s father because, Clemons .said, § 26-17-608, Ala.Code 1975, which is also a part of the 2008 AUPA, requires that the man whose paternity is to be adjudicated under the 2008 AUPA must be joined as a party to the proceeding and Raymond could not be joined as a party because he had died in 1975. The postjudgment motion also asserted that the judgment should be altered, amended, or vacated because, Clemons said, Justine’s claim seeking a determination that Raymond was her father was barred by the statute of limitations in § 6-2-38, Ala.Code 1975.[5] In the alternative, the postjudgment motion asserted that a new trial should be granted because, Clemons said, she had newly discovered evidence in the form of a 1938 school census in the records of the Choctaw County Board of Education (“the 1938 school census”) indicating that Sanders Howard was Justine’s father. Following a hearing, the trial court entered an order denying the postjudgment motion in April 2012. In that order, the trial court ruled that § 26-17-603 did not apply to the determination whether Raymond was Justine’s father; that the defense of the statute of limitations, which had been raised for the first time in the postjudgment motion, was an affirmative defense that had been waived by the defendants’ failure to plead it in their answer; and that the 1938 school census did not warrant the granting of a new trial because it had been available and discoverable before the trial and because, if presented at trial, it would not have outweighed the evidence indicating that Raymond was Justine’s father. Thereafter, Clemons timely appealed, and the supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.[6]
Because the trial court received evidence ore tenus, our review is governed by the following principles:
“““[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpá- *742 bly erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
Initially, we note that Clemons has not presented argument to this court regarding the issue whether Justine’s claim seeking an adjudication that Raymond was her father is barred by the statute of limitations. Therefore, she has waived that issue. See Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) (“When an appellant fails to argue an issue in its brief, that issue is waived.”).
Clemons argues that the trial court erred in denying her postjudgment motion insofar as it sought a new trial.
“It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error.”
Hitt v. Sherwood, 488 So.2d 1357, 1359 (Ala.1986).
“The criteria for granting a new trial based on newly discovered evidence are set out in Forest Investment Corp. v. Commercial Credit Corp., 271 Ala. 8[, 12], 122 So.2d 131[, 135] (1960). The criteria are:
“(1) the evidence will change the result of the trial;
“(2) the evidence has been discovered since trial;
“(3) the .evidence could not have been discovered by due diligence;
“(4) the evidence is material;
“(5) the evidence is not merely cumulative or impeaching.”
Eastwood Lands, Inc. v. Walter Carlos Anderton, Inc., 412 So.2d 247, 249 (Ala.1982).
In pertinent part, the trial court’s order denying the postjudgment motion stated:
“The [1938 school census] was available and discoverable and could have been presented at the trial held in this case on March 30, 2011 and on October 5, 2011, at which time it could have been properly offered as evidence in this case, with [Justine’s] having an opportunity to object to its admission, cross-examine the custodian of the records being offered and question the authenticity of the records relied on. The Court further notes that this record only reflects that Justine Howard’s mother was living with, and possibly, married to, Sanders Howard at the time, when [Justine] was 11 years old, and this evidence, of itself, would not be sufficient to rebut the presumption of paternity of Raymond Mitchell raised by the testimony and evidence received and admitted at the trial of this case.”
With regard to the issue whether the 1938 school census was available and discoverable before the trial, Clemons argues:
*743 “[I]t was not until trial when the defendants learned that [Justine] did not have a birth certifícate. Obviously, a birth certificate would establish a presumption of paternity. Furthermore, [Justine] testified that she believed the school she attended was ‘Mary Rose.’ Despite [Justine’s] recollection of the incorrect school name, the defendants were able to obtain the certified record [of the 1938 school census] post trial and subsequently provided [it] to the trial court as part of the [postjudgment] motion.”
First, we note that Clemons does not explain why she did not attempt to learn through pretrial discovery whether Justine had a birth certificate or where she had attended school. Second, the record on appeal indicates that Justine testified that she did not have a birth certificate and that the school she attended was named Mary Rose on the first day of trial in March 2011, yet Clemons does not explain why she did not discover the 1938 school census during the more than six-month recess between the first day of trial in March 2011 and the second day of trial in October 2011. For all that appears in the record, Clemons could have discovered the 1938 school census through pretrial discovery before the trial began in March 2011 or during the more than six-month recess in the trial after learning on the first day of trial that Justine did not have a birth certificate. Accordingly, Clemons has not shown that she exercised due diligence in seeking the 1938 school census and that, despite having exercised such due diligence, she could not have discovered the 1938 school census until after the trial had been concluded. Consequently, we conclude that the trial court’s denial of the postjudgment motion insofar as it sought a new trial was a proper exercise of the trial court’s discretion.
Finally, Clemons argues that the trial court erred in applying § 26-17-204(a)(5) to the determination whether Raymond was Justine’s father.
“The law concerning the right of an illegitimate child to inherit through intestate succession has seen many changes over the years. At common law, an illegitimate child, who had not been legitimated, was considered the child of no one and could inherit from no one. See Williams v. Witherspoon, 171 Ala. 559, 55 So. 132 (1911). The courts considered an illegitimate child ‘nullius films,’ the ‘heir to nobody,’ and thus, the child ‘ha[d] no ancestor from whom any inheritable blood [could] be derived.’ Lingen v. Lingen, 45 Ala. 410, 413 (1871) (quoting 1 Wendell’s Blackstone, 459).
“By 1929, in the case of Moore v. Terry, 220 Ala. 47, 124 So. 80 (1929), overruled in part by Everage v. Gibson, [372 So.2d 829 (Ala.1979) ], this Court had recognized that an illegitimate child, who had not been legitimated, could inherit from his mother, but not from his father, even if paternity was shown. This change was also reflected in Code 1940, Tit. 16, § 6, which provided that ‘[e]very illegitimate child is considered as the heir of his mother, and inherits her estate in whole or in part, as the case may be, in like manner as if born in lawful wedlock.’ Later, in Hudson v. Reed, 259 Ala. 340, 66 So.2d 909 (1953), this Court described the common law rule as a ‘harsh rule,’ and held that an illegitimate child, because of this statute, could inherit not only from his mother but also through his mother.
“Between 1929 and 1979, however, the law in Alabama recognized only the following two methods by which an illegitimate child could be legitimated in order to inherit from its father through intestate succession: 1) by marriage of the parents, accompanied by the father’s *744 recognition of the child; or 2) by a written declaration, attested by two witnesses, and filed with the judge of probate. See Moore, 220 Ala. 47, 124 So. 80 (1929); see also Code 1928, §§ 9299, 9300, later codified at Code 1940, Tit. 27, §§ 10, 11, and Code 1975, §§ 26-11-1, 26-11-2.
[[Image here]]
“After the United States Supreme Court decided the cases of Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), and Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), Alabama’s law concerning the right of an illegitimate child to inherit from its father changed dramatically. In Trimble, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the Court found an Illinois statute, much like Alabama’s Code 1975, §§ 26-11-1 and 26-11-2, which set forth the two methods of legitimation discussed above, to be unconstitutional under an equal protection challenge ....
[[Image here]]
“... In Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), the United States Supreme Court upheld, as constitutional, a similar New York statute because it provided that an illegitimate child could inherit from its father if there had been a judicial determination of paternity before the father’s death.
[[Image here]]
“Consequently, in 1979, this Court, in the case of Everage v. Gibson, 372 So.2d 829 (Ala.1979), cert. denied, 445 U.S. 931, 100 S.Ct. 1322, 63 L.Ed.2d 765 (1980), in order to avoid finding Alabama’s statutory scheme for intestate succession unconstitutional, construed it to include a third method of legitimation, i.e., a judicial determination of paternity made within two years of birth and during the father’s lifetime. The Everage Court gleaned this third method from the child support statutes found at Code 1975, § 26-12-1 et seq. In 1982, the Alabama legislature superseded Everage and wrote this procedure into the Probate Code itself, in § 43-8^48, which provides that an illegitimate child is considered to be the child of the father if the parents marry or if paternity is established by an adjudication before the death of the father or thereafter by clear and convincing proof. Then, in addition, in 1984, the legislature repealed Code 1975, § 26-12-1 et seq., and replaced those sections with the Alabama Uniform Parentage Act, found at Code 1975, § 26-17-1 et seq. Like the child support statutes it replaced, the AUPA sets forth a mechanism whereby a judicial determination of paternity can be made. Therefore, there are presently two statutory schemes for judicial determination of paternity, one in the Probate Code and one in the AUPA.”
Stone v. Gulf American Fire & Cas. Co., 554 So.2d 346, 363-67 (Ala.1989) (footnotes omitted). Subsequent to the supreme court’s decision in Stone v. Gulf American Fire & Casualty Co., Act No. 2008-376, Ala. Acts 2008, repealed the original Alabama Uniform Parentage Act, § 26-17-1 et seq., Ala.Code 1975, effective January 1, 2009, and replaced it with the 2008 AUPA, which became effective the same day. Thus, there are presently two statutory schemes for judicial determination of paternity, one in the Probate Code, § 43-8-1 et seq., Ala.Code 1975, and one in the 2008 AUPA.
When Raymond died in 1975, however, Alabama law did not allow a child born out of wedlock to inherit by intestate succession from his or her father unless the child had been legitimated “1) by marriage of the parents, accompanied by the father’s recognition of the child; or 2) by a written *745 declaration, attested by two witnesses, and filed with the judge of probate.” Stone v. Gulf American Fire & Cas. Co., 554 So.2d at 864 (footnote omitted). In the present case, the record does not indicate that Justine was legitimated by either of those methods. However, the Alabama law governing the right of a child born out of wedlock to inherit by intestate succession from his or her father that was in effect when Raymond died in 1975 has subsequently been held unconstitutional. See Stone v. Gulf American Fire & Cas. Co., 554 So.2d at 368. In Stone v. Gulf American Fire & Cas. Co., the supreme court stated:
“We recognize that the law at the time of [the] father’s death had not yet recognized the third method of legitimation for purposes of intestate succession, i.e., a judicial determination of paternity; however, we also recognize that the law as it existed at that time has since been found to be unconstitutional by the United States Supreme Court in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), and by this Court in Everage v. Gibson, 372 So.2d 829 (Ala.1979).
“In an action, such as the present one, that is not time-barred and is properly before this Court, we are bound to apply a constitutional law as it exists at the time the appeal is heard. This situation has been addressed by this Court and the Court of Civil Appeals in the cases of Cotton v. Terry, 495 So.2d 1077 (Ala.1986); Abrams v. Wheeler, 468 So.2d 126 (Ala.1985); and Free v. Free, 507 So.2d 930 (Ala.Civ.App.1986).
“In Cotton, 495 So.2d 1077 (Ala.1986), an illegitimate child brought an action to establish paternity under Code 1975, § 43 — 8-48(2)(b), 11 years after the death of the alleged father. In construing § 43-8-48(2)(b), this Court held:
“ ‘[I]t may be seen from the plain language of the statute that paternity of an illegitimate child may be established after the death of the father through an adjudication supported by clear and convincing evidence. When so established, such a child may inherit from the father through intestate succession.’ ...
“Cotton, 495 So.2d at 1079. In Cotton, as in the present case, there was clear evidence that the alleged father recognized the child as his and held himself out as the child’s father. Yet, in Cotton, as in the present case, the law at the time of the alleged father’s death would not have recognized the child as an heir. Even so, this Court did not apply an unconstitutional law to the parties, but, rather, applied the law as it existed at the time of the appeal. Also, in Abrams v. Wheeler, 468 So.2d 126 (Ala.1985), an illegitimate child brought a paternity action before the death of the father, but after the expiration of the two-year limitations period that had been adopted in Everage, 372 So.2d 829 (Ala.1979). However, this Court refused to apply the two-year limitations period because it had since been found to be unconstitutional. Instead, it applied the law as it ■existed at the time of the appeal, and found the action not time-barred. Again, in Free v. Free, 507 So.2d 930 (Ala.Civ.App.1986), an illegitimate child brought an action under § 43 — 8—48(2)(b), not only after the death of the father, but also 20 years after the child had reached the age of majority. Despite the arguments by the legitimate heirs, the Court of Civil Appeals refused to apply the law in effect at the time of the death of the father or at the time of the birth of the child because that law had since been found unconstitutional.”
554 So.2d at 368 (emphasis added; original emphasis and footnote omitted). Thus, in *746 the present case, because the law that governed whether a child born out of wedlock could inherit by intestate succession from his or her father when Raymond died in 1975 has subsequently been held unconstitutional, we must apply the constitutional law governing that issue that exists at the present time. See Stone v. Gulf American Fire & Cas. Co., supra.
Section 26-17-103, Ala.Code 1975, the Code section of the 2008 AUPA stating the scope of the application of the 2008 AUPA, provides that the 2008 AUPA “applies to determination of parentage in this state except for matters relating to legitimation and adoption.” § 26-17-103(a). Sections 26-11-1 and 26-11-2, Ala.Code 1975, provide for the legitimation of a child born out of wedlock and, therefore, constitute express exceptions to the application of the 2008 AUPA.[7] The Alabama Adoption Code, § 26-10A-1 et seq., Ala.Code 1975, governs adoptions in Alabama and, therefore, constitutes an express exception to the 2008 AUPA. Section 43-8-48(2)b., Ala.Code 1975, a part of the Probate Code, provides, in pertinent part, that, “[i]f, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person[,]” a child born out of wedlock is the child of the father if “[t]he paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof....” (Emphasis added.) Although the 2008 AUPA does not expressly except from its application determinations of paternity for purposes of intestate succession pursuant to § 43-8^8(2)b., “[tjhere is a rule of statutory construction that specific provisions relating to specific subjects are understood as exceptions to general provisions relating to general subjects.” Murphy v. City of Mobile, 504 So.2d 243, 244 (Ala.1987). Section 43—8—48(2)(b) is a specific provision addressing the specific subject of judicial determinations of paternity for purposes of intestate succession, whereas the 2008 AUPA addresses judicial determinations of paternity in general. Accordingly, we conclude that § 43-8-48(2)b. constitutes an exception to the 2008 AUPA, see Murphy v. City of Mobile, supra, and that, therefore, § 43-8^48(2)b., rather than the 2008 AUPA governs judicial determinations of paternity for purposes of intestate succession.
Thus, in the present case, we conclude that, because Justine sought an adjudication of paternity for purposes of determining intestate succession, § 43-8-48(2)b., rather than the 2008 AUPA, governed the adjudication of the issue whether Raymond was Justine’s father. Consequently, the trial court erred in applying § 26-17-204(a)(5), a part of the 2008 AUPA, to that determination. Therefore, we reverse the judgment of the trial court insofar as it determined that Raymond was Justine’s father. Moreover, because the determination that Justine owned an undivided one-half interest in the property was dependent on the determination that Raymond was Justine’s father, we reverse the judgment of the trial court insofar as it determined that Justine owned an undivided one-half interest in the property. Furthermore, we remand the cause with instructions for the trial court (1) to determine whether Raymond was Justine’s father by applying § 43-8^48(2)b. to the evidence already presented and (2) to de *747 termine, based on the evidence already presented, who owns the undivided one-half interest in the property Raymond owned when he died.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. When Raymond died in 1975, Title 16, § 1, Ala.Code 1940 (Recomp. 1958), provided, in pertinent part:
"The real estate of persons dying intestate, as to such estate descends, subject to the payment of debts, charges against the estate, and the widow’s dower, as follows:
"(1) To the children of the intestate, or their descendants, in equal parts.”

. In pertinent part, § 35-6-20, Ala.Code 1975, provides that "[t]he circuit court shall have original jurisdiction to divide or partition, or sell for partition, any property, real or personal, held by joint owners or tenants in common....” Section 35-6-22, Ala.Code 1975, provides that "[t]he court shall ascertain and declare the rights, titles and interest of all the parties to such action, the plaintiffs as well as the defendants, and shall give judgment according to the rights of the parties.” In pertinent part, § 35-6-23(a), Ala.Code 1975, provides:
“If the title of the plaintiffs seeking partition or sale of lands for a division shall be controverted, or should the title or claim of any of the parties to the action be adverse to that of one or more of the other parties, the question of title shall be tried and determined in the action by the circuit court, which shall have power to determine all questions of title-”

. Although a Rule 59, Ala. R. Civ. P., motion may be made only in reference to a final, appealable judgment, see Ex parte Troutman Sanders, LLP, 866 So.2d 547, 549-50 (Ala.2003), in a sale-for-division action both the judgment ordering the sale and the judgment confirming the sale are final, appealable judgments, see Jetton v. Jetton, 502 So.2d 756, 759 (Ala.1987).

. In pertinent part, § 26-17-204(a)(5) provides that a man is presumed to be the father of a child if,
"while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child.”

. In pertinent part, § 6-2-33(2) provides that "[ajctions for the recovery of ... heredita-ments, or the possession thereof,” must be commenced within 10 years. In Blackmon v. Brazil, 895 So.2d 900, 909 (Ala.2004), the supreme court held that § 6-2-33(2) applies to a claim brought by a child bom out of wedlock who seeks an adjudication of paternity for purposes of intestate succession pursuant to § 43-8-48, Ala.Code 1975.

. None of the other defendants filed a notice of appeal.

. Section 26-11-1 provides that a child born out of wedlock may be legitimated by the marriage of the parents accompanied by the father's recognition of the child as his. Section 26-11-2 provides for legitimation of a child born out of wedlock by the father’s filing with the probate court of the father's or the child's residence a written declaration of legitimation attested by two witnesses.