SELLERS, Justice.
Patricia Campbell appeals from an order of the Mobile Circuit Court adjudicating J.R.C., J.L.C., R.L.C., and J.H.S., minor children, as the heirs of the estate of her son, Remano L. Campbell. We affirm.
I. Facts and Procedural History
Remano died intestate in October 2011, the victim of a homicide perpetrated by his wife, Eugenia Campbell. At the time of his death, Remano was the insured under a $200,000 life-insurance policy issued by United of Omaha Life Insurance Company ("Omaha"). The policy lists Eugenia as the beneficiary, and Eugenia filed a claim for the proceeds of the policy. Because of the circumstances surrounding Remano's death and, more specifically, the existence of a pending criminal investigation, Omaha, pursuant to Rule 22, Ala. R. Civ. P., filed an interpleader action against Eugenia *137 and Remano's estate, depositing the proceeds from the policy plus interest into an escrow account with the circuit court and requesting that the court determine the heirs of Remano's estate, who would possibly be entitled to the proceeds of the policy.[1] The circuit court thereafter appointed an administrator ad litem to represent Remano's estate pursuant to § 43-2-250, Ala. Code 1975.[2]
In August 2016, Eugenia pleaded guilty in connection with Remano's murder; accordingly, the proceeds of the insurance policy were payable as though she had predeceased Remano. § 43-8-253(c), Ala. Code 1975.[3] Because Eugenia is not considered to be Remano's surviving spouse, the proceeds of the insurance policy would pass to Remano's issue; if there is no surviving issue, then to his parent or parents equally. See § 43-8-42, Ala. Code 1975. In this case, Remano and Eugenia were legally married in June 2002. During their marriage, Remano and Eugenia had three children--J.R.C., J.L.C., and R.L.C. (hereinafter referred to collectively as "the Campbell children"). Eugenia also had another child, J.H.S., who was born approximately 18 months before her marriage to Remano and who lived with Remano and Eugenia throughout their marriage.
Following Eugenia's conviction, Patricia, Remano's mother, petitioned the Mobile Probate Court for letters of administration. In her petition, as amended, Patricia alleged that she was an heir of Remano and that the Campbell children and J.H.S. were only purported heirs because, she claimed, they were not Remano's biological children. Virginia G. Chouinard, the guardian ad litem for the minor children, objected to Patricia's petition, asserting that, because Patricia was challenging the legitimacy of the minor children, she would have a conflict representing Remano's estate.
In January 2017, the administrator ad litem of Remano's estate filed a complaint in the interpleader action, seeking a judgment declaring that the Campbell children and J.H.S. were Remano's heirs and thus were entitled to the life-insurance proceeds. The circuit court, at the administrator ad litem's request, appointed Chouinard, the guardian ad litem for the minor children in the probate court, as the guardian ad litem for the minor children in the circuit court.
In February 2017, the probate court issued letters of administration to Frank H. Kruse, the general administrator of Mobile County ("the administrator"), who intervened in the interpleader action and petitioned the circuit court to appoint a separate guardian ad litem for J.H.S. and, following a hearing, to enter an order determining the heirs of the estate. The circuit *138 court appointed Mary Carol Ladd as the guardian ad litem for J.H.S.
In June 2017, the administration of Remano's estate was removed from the probate court to the circuit court, where it was consolidated with the interpleader action.[4]
In July 2017, Patricia petitioned the circuit court, pursuant to the Alabama Uniform Parentage Act, § 26 - 17 - 101 et seq., Ala. Code 1975 ("the AUPA"), for an order establishing the paternity of the Campbell children and J.H.S. After conducting a hearing, the circuit court entered an order adjudicating the Campbell children and J.H.S. to be Remano's heirs and further finding that Patricia lacked standing to challenge the paternity of the children.[5] Accordingly, the circuit court ordered disbursement of the insurance proceeds in the interpleader action and directed that the estate administration be remanded to the probate court. Patricia filed a postjudgment motion, which was denied. This appeal followed.
II. Standard of Review
"To the extent the circuit court made factual findings based on oral testimony, those factual findings are entitled to deference by this Court under the ore tenus standard of review. Under that standard, ' "we must accept as true the facts found by the trial court if there is substantial evidence to support the trial court's findings." ' Allsopp v. Bolding, 86 So.3d 952, 959 (Ala. 2011) (quoting Beasley v. Mellon Fin. Servs. Corp., 569 So.2d 389, 393 (Ala. 1990) ). This standard is based on a recognition of the trial court's unique position of being able to evaluate the credibility of witnesses and to assign weight to their testimony. See, e.g., Justice v. Arab Lumber & Supply, Inc., 533 So.2d 538, 543 (Ala. 1988). The deference owed a trial court under the ore tenus standard of review, however, does not extend to the trial court's decisions on questions of law. Appellate review of questions of law, as well as whether the trial court has properly applied that law to a given set of facts, is de novo. See, e.g., Ex parte Graham, 702 So.2d 1215, 1221 (Ala. 1997)."
Wehle v. Bradley, 195 So.3d 928, 934 (Ala. 2015).
III. Analysis
We begin our analysis with the Campbell children, who were born during Remano and Eugenia's marriage. As indicated, the circuit court concluded that Patricia lacked standing under the AUPA to challenge the paternity of those children. The AUPA addresses judicial determinations of paternity in general and excepts from its scope matters concerning legitimation and adoption.[6] See § 26-17-103, Ala. Code 1975. See also *139 Clemons v. Howard, 124 So.3d 738, 746 (Ala. Civ. App. 2013) (holding that the AUPA also excepts from its scope § 43-8-48(2)b., Ala. Code 1975, a part of the Uniform Probate Code, providing that, " '[i]f, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person[,]' a child born out of wedlock is the child of the father if '[t]he paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof' "(emphasis omitted) ).
In this case, it is undisputed that the Campbell children were not adopted or born out of wedlock; thus, any issue concerning their paternity can be resolved by applying the applicable provisions of the AUPA. Specifically, because the Campbell children were born during the legal marriage of Remano and their mother, they are entitled to the presumption of paternity stated in § 26-17-204(a)(1), Ala. Code 1975, a part of the AUPA. Section 26-17-204(a)(1) provides that "[a] man is presumed to be the father of a child if ... he and the mother of the child are married to each other and the child is born during the marriage." The presumption of paternity established by § 26-17-204(a)(1) may be rebutted in an appropriate action by clear and convincing evidence. See § 26-17-601 et seq., Ala. Code 1975. Section 26-17-602, Ala. Code 1975, identifies a broad range of individuals and agencies who have standing to bring a paternity action, including in § 26-17-602(7) "any interested person." Patricia asserts that, because she is a potential heir of Remano's estate, she has standing to challenge the paternity of the Campbell children. Although § 26-17-602 states that any interested person may maintain an action to adjudicate paternity, § 26-17-602 is limited in application by §§ 26-17-607 and 26-17-609, Ala. Code 1975. In Ex parte S.E., 125 So.3d 720, 721 (Ala. Civ. App. 2013), the Court of Civil Appeals explained:
" Section 26-17-602, Ala. Code 1975, a part of the Alabama Uniform Parentage Act ('the AUPA'), § 26 - 17 - 101 et seq., Ala. Code 1975, provides that any interested party may bring an action to adjudicate parentage. However, § 26-17-602 is limited in application by §§ 26-17-607 and 26-17-609, Ala. Code 1975, which restrict who has standing to seek an adjudication of paternity. When there is a presumed father, the AUPA permits the presumed father to bring an action to disprove his paternity at any time. § 26-17-607(a). However, if the presumed father wishes to persist in his presumption of paternity, no one may bring an action to disprove his paternity or to establish paternity in another man. Id. ('If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.'). The Alabama Comment to § 26-17-607 specifically states that '[s]ubsection (a) follows Ex parte Presse, 554 So.2d 406 (Ala. 1989) [,] and its progeny that favor maintaining the integrity of the family unit and the father-child relationship that was developed therein.' "
(Emphasis added.) In this case, the circuit court held a hearing to determine whether Patricia had standing to assert a paternity claim and, more specifically, to allow the parties to present evidence bearing on whether Remano, during his lifetime, persisted in the presumption of paternity afforded him by § 26-17-204(a)(1). In other words, if the evidence demonstrated that Remano, during his lifetime, persisted in his paternity, Patricia would have no standing to challenge that paternity. See W.D.R. v. H.M., 897 So.2d 327, 331 (Ala. Civ. App. 2004) (noting that "a man seeking to establish paternity of a child born *140 during the mother's marriage to another man must be given the opportunity to establish standing in an evidentiary hearing where he and others may present evidence bearing on whether the presumed father, who was deceased, had persisted in his presumption of paternity"). The evidentiary hearing in this case established that Remano and Eugenia were legally married to each other when each of the Campbell children was born and that Remano was listed as the father on each of their birth certificates. Moreover, the application for the life-insurance policy included a dependent-children's rider, insuring each of the Campbell children, including J.H.S., for $10,000 and identifying each child as either the "son" or "daughter" of Remano. The children's maternal grandmother, who is also the guardian of the Campbell children and J.H.S., testified that Remano consistently provided for all the children both financially and emotionally and that he referred to J.H.S. as his son. The circuit court noted that neither Patricia nor anyone else produced any evidence to dispute that Remano, during his lifetime, ever repudiated his paternity with regard to the Campbell children or J.H.S., for that matter. Because Remano is the presumed father of the Campbell children under § 26-17-204(a) and because the evidence is undisputed that he persisted in his paternity during his lifetime, the circuit court properly concluded that Patricia lacked standing under the AUPA to challenge Remano's paternity as to them. Because Patricia was ruled out as a potential heir of Remano's estate, no challenge as to J.H.S.'s heirship remains. See § 43-8-42 (a parent takes no share of the decedent's estate where there is surviving issue).
Patricia finally argues that the circuit court erred in not removing the administrator ad litem of the estate once an administrator for the estate was appointed. Patricia moved to remove the administrator ad litem because, she says, his position in regard to the disposition of the insurance proceeds was inconsistent with the position taken by the administrator. Specifically, unlike the administrator, who maintained a neutral position, the administrator ad litem took the position that the Campbell children and J.H.S. were presumed heirs of Remano entitled to equal shares of the life-insurance proceeds. Patricia states that, for this reason, the entire process at the trial court level was flawed and that, therefore, the case should be remanded so that she can pursue her paternity action. Patricia failed to cite any legal authority in her initial appellate brief to support her argument that the trial court erred in declining to remove the administrator ad litem. Rule 28(a)(10), Ala. R. App. P., requires that an argument in an appellate brief contain "the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." Although Patricia does cite Affinity Hospital, L.L.C. v. Williford, 21 So.3d 712 (Ala. 2009), in her reply brief, her reliance on that case is as tardy as it is inapplicable.[7] See Steele v. Rosenfeld, LLC, 936 So.2d 488, 493 (Ala. 2005) (noting that " 'an argument may not be raised, nor may an argument be supported by citations *141 to authority, for the first time in an appellant's reply brief.' Improved Benevolent & Protective Order of Elks v. Moss, 855 So.2d 1107, 1111 (Ala. Civ. App. 2003), abrogated on other grounds, Ex parte Full Circle Distribution, L.L.C., 883 So.2d 638 (Ala. 2003)"); see also Meigs v. Estate of Mobley, 134 So.3d 878, 889 n. 6 (Ala. Civ. App. 2013) (noting that " Rule 28(a)(10) [, Ala. R. Civ. P.,] requires compliance in an appellant's initial brief"); and L.J.K. v. State, 942 So.2d 854, 868 (Ala. Crim. App. 2005) (noting that citation to legal authority for the first time in reply brief is the equivalent of raising an issue for the first time in that brief). Accordingly, Patricia is deemed to have waived her argument that the circuit court erred in failing to remove the administrator ad litem in this case.
IV. Conclusion
The judgment of the circuit court adjudicating J.R.C., J.L.C., R.L.C., and J.H.S. as the heirs of Remano's estate is affirmed.
AFFIRMED.
Stuart, C.J., and Parker, Main, Wise, Bryan, and Mendheim, JJ., concur.
Bolin and Shaw, JJ., concur in the result.
BOLIN, Justice (concurring in the result).
I respectfully concur only in the result, because the following issue was not argued by Patricia Campbell, the appellant in this appeal. However, I think it is important to address why an administrator and an administrator ad litem could not coexist in this case.
In a proceeding in which an estate must be represented and there is no executor or administrator, the court may appoint an administrator ad litem for the estate for that particular proceeding, i.e., "a special administrator appointed by the court to represent the estate's interest in an action usu. either because there is no administrator or because the current administrator has an interest in the action adverse to that of the estate." Black's Law Dictionary 54 (10th ed. 2014). That is precisely what happened here following the interpleading of the insurance proceeds on the life of Remano L. Campbell into the circuit court, where no estate had been opened. The error occurred when the administrator ad litem continued to represent the estate subsequent to the probate court's appointment of a personal representative for the estate.
In this case, United of Omaha Life Insurance Company ("Omaha") had contracted with Remano, the decedent, for a life-insurance policy in the amount of $200,000. Remano's wife, Eugenia Campbell, was the named beneficiary. After Remano's death, Eugenia made claim for the proceeds of the policy. Rather than pay the proceeds to Eugenia, Omaha, as a result of the circumstances relating to the cause of Remano's death, elected to file an interpleader action against Eugenia and Remano's estate in the Mobile Circuit Court, requesting that the circuit court determine the lawful recipients of the life-insurance proceeds. Because no administration of Remano's estate was pending at that time, the circuit court appointed an administrator ad litem for the estate pursuant to § 43-2-250, Ala. Code 1975.
As the action continued, Eugenia pleaded guilty to the felonious homicide of Remano, thereby triggering the beneficiary-forfeiture provision of § 43-8-253(c), Ala. Code 1975, which prevents a beneficiary from profiting from the felonious and intentional killing of an insured. There being no contingent beneficiary listed in the policy, the effect of that section is that the proceeds "become payable as though the killer had predeceased the decedent," either *142 by the terms of the decedent's will or, in the absence of a will, by virtue of the laws of descent and distribution. I submit that the life-insurance proceeds here should devolve to Remano's estate -- that is where assets of an estate are properly administered, providing protection for any lawful creditors of the estate. The only, and I submit whole, purpose of the administrator ad litem was to represent the interests of the estate before an administration of the estate. Rather, the administrator ad litem advocated that four minor children receive the policy proceeds as secondary beneficiaries, thereby bypassing the proper administration of Remano's estate and the rights of creditors therein.
In the meantime, Remano's mother, Patricia Campbell, petitioned the Mobile Probate Court for probate of Remano's intestate estate and for letters of administration for herself, listing in the petition that the four children were "purported" heirs. Apparently recognizing the conflict of interest Patricia had in her attempt to have those four children declared illegitimate, resulting in her becoming Remano's primary heir at law, the Mobile Probate Court appointed the general administrator for Mobile County, Frank H. Kruse, a disinterested party, to be the personal representative of the estate and issued letters of administration to him.
Assuming that this personal representative had no conflict in representing the estate in the interpleader action pending in the circuit court, he correctly intervened in the circuit court action on behalf of Remano's estate, as the duly appointed and lettered estate representative. At such time, there was no further need or legal necessity for the (non-bonded) administrator ad litem to continue any role in the litigation.
There are instances when both the administrator ad litem and the administrator of an estate may coexist; however, coexistence is not possible where two administrators set forth vastly inconsistent positions, purportedly for the same party, in the same proceeding. For instance, when a personal representative has been appointed and that personal representative has a conflict of interest with regard to the litigation, the court may then appoint an administrator ad litem for a special and limited purpose. The administrator ad litem may subsist together with the administrator and facilitate the separate roles that are required. However, in the instant case, the administrator and the administrator ad litem took adverse positions. Moreover, the need for an administrator ad litem in representing the estate where the estate had no representation essentially ended when the personal representative was appointed.
The circuit court appointed a guardian ad litem for the three children born during Remano and Eugenia's marriage and a different guardian ad litem for the child born 18 months before their marriage, because their legal interests were not aligned. Those two guardians ad litem were positioned to represent the best interests of their respective clients, rather than the administrator ad litem in a perverted role -- he should have been representing and protecting the unopened estate of the decedent but, instead, was advocating for the children's interests collectively. Therefore, both the special administrator ad litem appointed by the circuit court and the administrator of the estate appointed by the probate court presented inconsistent positions on behalf of the estate in the same action before the same court.
The administrator ad litem was initially appointed by the circuit court because Remano's estate was not open when the interpleader action was filed. Upon the opening of Remano's estate, however, the probate court ensured that the assets of *143 the estate would be protected by appointing the general administrator for Mobile County as the personal representative. The estate intervened in the interpleader action, and the administration of the estate was removed from the probate court to the circuit court and, at least theoretically, consolidated with the interpleader action as one case. Because the removed estate administration was not treated as a separate action with its own case number and was consolidated with the interpleader action, the proceedings were not considered separate. Despite the opening of the estate and the appearance of a duly appointed personal representative/intervener, which I submit rendered unnecessary the further services of the administrator ad litem, the circuit court allowed, over the objection of the personal representative, the administrator ad litem to remain in the proceedings.
As stated earlier, § 43-2-250 provides for an administrator ad litem:
"When, in any proceeding in any court, the estate of a deceased person must be represented, and there is no executor or administrator of such estate, or he is interested adversely to, it shall be the duty of the court to appoint an administrator ad litem of such estate for the particular proceeding, without bond, whenever the facts rendering such appointment necessary shall appear in the record of such case or shall be made known to the court by the affidavit of any person interested therein."
(Emphasis added.)
Thus, it was the duty of "any court," here the circuit court, to appoint an administrator ad litem when there was the need for a then nonexistent decedent's estate to be represented. In this case, an appointment was made solely for the purpose of allowing the interpleader action to proceed in the circuit court. But clearly, after (1) the personal representative of the estate was appointed by the probate court, with a fiduciary bond, and was granted letters of administration, and (2) the personal representative petitioned to intervene in the interpleader action, and (3) the administration of the estate itself was removed to the circuit court and ostensibly consolidated with the interpleader action, the services of the administrator ad litem were no longer necessary in the circuit court proceeding. See § 43-2-250.
Moreover, the position that the administrator ad litem took, advocating for the children as heirs who should directly receive the life-insurance proceeds, was aligned with the position of the guardians ad litem, thereby creating a conflict of interest between the two estate representatives.
"Generally, an administrator ad litem is a fiduciary charged with acting in the best interests of the successors to an estate. An administrator and an administrator ad litem serve in different fiduciary capacities and are separate and distinct parties. The appointment of an administrator ad litem may precede the appointment of an administrator, and the two may subsist together. The administrator ad litem is appointed for a special and limited purpose and is solely responsible to the estate for that portion of its affairs entrusted to him or her by the court. 31 Am. Jur. 2d Executors and Administrators § 1050 (2002)."
Affinity Hosp., L.L.C. v. Williford, 21 So.3d 712, 716 (Ala. 2009) (emphasis added). See also Thames v. Thames, 183 So.3d 168 (Ala. Civ. App. 2015) (" '[T]he need for an administrator ad litem occurs when there is already an existing civil proceeding ("in any proceeding in any court") that is in need of someone to substitute for a deceased party, who either has no personal representative or has one who is conflicted.'
*144 " (quoting Golden Gate Nat'l Senior Care, LLC v. Roser, 94 So.3d 365, 370 (Ala. 2012) (Bolin, J., concurring specially)(emphasis added) ) ).
The only conflict in this matter is not the type of conflict discussed above -- i.e., a personal representative who has his or her own personal conflict in the peripheral legal matters where representation of the estate is necessary. Ironically, the only conflict exists by the presence of the competing motions and pleadings, arguments, and objections filed by the two representatives of Remano's estate in this case. For example, the personal representative of Remano's estate filed a petition to distribute the funds held by the court; the administrator ad litem objected. The personal representative of the estate filed a memorandum of law asserting that Patricia Campbell had standing to pursue the paternity action; the administrator ad litem disagreed. The administrator ad litem sought to have the estate itself dismissed from the circuit court case contending that the insurance proceeds were not payable to the estate and should be paid directly to the children; the personal representative responded that the administrator ad litem's position was in conflict with the plain language of the policy and, moreover, that his appointment as personal representative effectively mooted the need for the administrator ad litem because, under § 43-2-250, an administrator ad litem is appointed only if there is no qualified legal representative of the estate. All of these are the unfortunate happenings that may occur when two separate entities, with different, yet similar, duties and responsibilities, are allowed to represent and advocate for the same party.
The circuit court correctly appointed an administrator ad litem when the estate was legally nonexistent and needed representation. But I submit that the court erred in allowing an unnecessary administrator ad litem to continue to hold a position in the litigation, particularly as an advocate who made arguments to the possible detriment (the potential loss of estate assets) of the party he was appointed to represent, in the circuit court proceedings after Remano's estate was opened and a fiduciary appointed and the estate was removed from probate and subsumed, as an actual party, within the interpleader action.
The circuit court's failure to remove the administrator ad litem in this action was an obstacle that prevented the proper administration of the proceedings. There may not be any creditors of Remano's who are prejudiced by the circuit court's inaction, but justice dictates that the adversarial proceeding be conducted in a fair manner, with each party being represented, but no party being represented by two opposing representatives.
Based on the foregoing, it is my opinion that the circuit court erred procedurally in allowing the hearing to proceed as it did.

The circuit court allowed the funds to be interpleaded and subsequently discharged Omaha as the plaintiff in the interpleader action.

The role of an administrator ad litem is governed by § 43-2-250 :
"When, in any proceeding in any court, the estate of a deceased person must be represented, and there is no executor or administrator of such estate, or he is interested adversely thereto, it shall be the duty of the court to appoint an administrator ad litem of such estate for the particular proceeding, without bond, whenever the facts rendering such appointment necessary shall appear in the record of such case or shall be made known to the court by the affidavit of any person interested therein."

Section 43-8-253(c) provides:
"A named beneficiary of a ... life insurance policy ... who feloniously and intentionally kills ... the person upon whose life the policy is issued is not entitled to any benefit under the ... policy, ... and it becomes payable as though the killer had predeceased the decedent."

The estate-administration proceeding was not assigned a separate case number in the circuit court. Rather, following removal of the estate administration to the circuit court, the record in estate administration was filed in the circuit court, and that court conducted consolidated proceedings in the estate administration proceeding and the interpleader action.

We note that § 26-17-602, Ala. Code 1975, lists those individuals and/or entities that have "[s]tanding to maintain [a paternity] proceeding." Because the statute specifically uses the term "standing," we will use that term in this opinion. See generally Ex parte MERSCORP, Inc., 141 So.3d 984 (Ala. 2013) (discussing the confusion in our jurisprudence between issues of standing and the failure to state, or to prove, a cognizable claim).

Sections 26-11-1 and 26-11-2, Ala. Code 1975, provide for the legitimation of a child born out of wedlock. The Alabama Adoption Code, § 26-10A-1 et seq., Ala. Code 1975, governs adoptions.

Patricia states that Affinity demonstrates what should have happened in this case. She then states that in Affinity the administrator ad litem filed a wrongful-death action against the hospital in July 2007 and that in April 2008 the administrator appointed for the estate was substituted for the previously appointed administrator ad litem. However, Patricia fails to explain how Affinity has any specific application to the facts of this case and, more specifically, how that case demonstrates any error on the part of the circuit court in this case.